**Appeal Dismissed; Petition for Writ of Mandamus Conditionally Granted and Opinion filed March 29, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00770-CV
_____

### THE KNIGHT CORPORATION, Appellant

### V.

### SUSANA NERY KNIGHT, Appellee

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 09-DCV-176316**

---

_____

## NO. 14-11-00994-CV
_____

### IN RE THE KNIGHT CORPORATION, Relator

---

**ORGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**434th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 09-DCV-176316**

---

# **O P I N I O N**

On August 31, 2011, the Knight Corporation filed a notice of appeal from the trial court's order signed August 12, 2011. That appeal was assigned to this court under our appellate case number 14-11-00770-CV. On November 15, 2011, relator filed a petition for writ of mandamus in this court complaining of the same order. *See* Tex. Gov't Code § 22.221; *see also* Tex. R. App. P. 52. Relator complains that respondent, the Honorable James H. Shoemake, presiding judge of the 434th District Court of Fort Bend County, Texas, abused his discretion in denying relator's special appearance.

Today, the court, on its own motion, orders the appeal and original proceeding consolidated. We dismiss the appeal and conditionally grant the writ of mandamus.

## I. Background

The Knight Corporation ("Knight Corp.") was formed in Pennsylvania in 1974. In 1990, Geoff and Susana Knight were married in Texas. Knight Filter Corporation ("Knight Filter") was formed in Texas in 1992. Geoff Knight is vice president of Knight Corp. and president of Knight Filter. In 1997, Knight Filter became the wholly owned subsidiary of Knight Corp. Knight Filter manufactures and sells filter bags and related products for industrial uses.

Geoff filed for divorce in Texas in 2009. Shortly thereafter, Susana counterclaimed for divorce. On July 27, 2010, Susana filed a third amended petition in which she added Knight Corp. as a party in the divorce. In the amended petition, Susana alleged that Knight Corp., Knight Filter, and Grasslyn, L.L.C. are the alter egos of Geoff. Susana further alleged that Geoff, acting through these corporations, acted fraudulently to hide community assets. Susana alleged that Knight Corp. "continuously squandered and misappropriated community estate assets from corporate accounts[.]"

Susana alleged that the Knight Corp. could be sued in Texas because:

2

- It is the parent company of Knight Filter, doing business in Texas;

- pays rent to Geoff for manufacturing space in Houston;

- vice president, Geoff, lives in Texas;

- maintains a bank account in Texas;

- recruits Texas residents directly for employment in Texas; and

- engages in business in Texas.

Knight Corp. filed a special appearance in which it alleged it is not a Texas resident and has no purposeful contacts with this state. Knight Corp. is organized under the laws of Pennsylvania with its principal place of business in Havertown, Pennsylvania. Knight Corp. alleged that it has not purposefully availed itself of the privilege of conducting business in Texas. Further, Knight Corp. alleged it had exercised its right to structure its affairs in a manner calculated to shield it from general jurisdiction of Texas courts by owning a Texas subsidiary.

Knight Corp. challenged each of Susana's allegations and asserted as follows:

- Manufacturing is accomplished by Knight Filter;

- Geoff is president of Knight Filter;

- Knight Filter is a wholly-owned subsidiary of Knight Corp.;

- The name of Knight Corp. on the Bank of America account in Houston is a bank mistake not detected until the filing of this suit. Knight Filter is the true owner of the account;

- Knight Corp. pays rent to Geoff for the Knight Filter office, but the rent is properly expensed to the subsidiary; and

- Knight Corp. does not recruit Texas residents for employment, nor does it participate in the hiring of employees for Knight Filter.

3

The trial court denied the special appearance on August 12, 2011 finding that the court has jurisdiction due to Knight's "systemic and continuous business in the State of Texas[.]" The interlocutory appeal and mandamus proceeding followed.

## II.   Special Appearances in Family Law Cases

Generally, Texas appellate courts only have appellate jurisdiction over appeals from final judgments unless a statute specifically allows a particular type of interlocutory appeal. *Ogletree v. Matthews*, 262 S.W.3d 316, 319 n.1 (Tex. 2007). Normally, the grant or denial of a special appearance is subject to an interlocutory appeal; however, if it involves a family law matter, there is no such right to an interlocutory appeal. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2011); *see In re Marriage of Loya*, 290 S.W.3d 920, 921 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Accordingly, we dismiss the Knight Corp.'s appeal in cause number 14-11-00770-CV.

We conclude that the denial of the special appearance in this case is potentially subject to mandamus review. *See In re Derzapf*, 219 S.W.3d 327, 335 (Tex. 2007) (conditionally granting mandamus relief because temporary orders in family matter are not subject to interlocutory appeal); *In re J.W.L.*, 291 S.W.3d 79, 83 (Tex. App.—Fort Worth 2009, orig. proceeding [mand. denied]) (determining that denial of special appearance in family law case was subject to mandamus review).

## III.   Waiver of Special Appearance

Susana contends Knight Corp. waived its special appearance because Geoff filed a motion to quash service before Knight Corp. filed its special appearance. A defendant waives its right to contest the trial court's exercise of personal jurisdiction under Texas Rule of Civil Procedure 120a when the defendant: (1) invokes the judgment of the court on any question other than jurisdiction; (2) engages in acts that recognize an action is properly pending; or (3) seeks affirmative action from the court. *See Dawson–Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998); *Angelou v. African Overseas Union*, 33 S.W.3d 269, 275

4

(Tex. App.—Houston [14th Dist.] 2000, no pet.). We review a trial court's finding with regard to waiver under a *de novo* standard of review. *See, e.g., Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304–05 (Tex. 2004).

Susana raised the issue of waiver at a hearing before the trial court. The trial court did not find waiver and ruled on the special appearance on the merits. Geoff argued that the motion to quash was filed by Geoff individually, not by Knight Corp.; therefore, there was no general appearance by Knight Corp. The motion to dismiss, or, alternatively, motion to quash service of process was filed by Geoff, who claimed that Susana failed to obtain leave of court to add the third-party defendant Knight Corp. in violation of Texas Rules of Civil Procedure 38. Geoff argued that as a principal party in the suit, Susana did not comply with the rules by adding Knight Corp. as a third party. Geoff filed the motion as an individual, not as a representative of Knight Corp. The trial court overruled Susana's waiver argument.

Courts generally do not find waiver of a special appearance when a party neither acknowledges the trial court's jurisdiction nor takes actions inconsistent with challenging personal jurisdiction. *See, e.g., Dawson-Austin*, 968 S.W.2d at 306–07 (seeking a ruling on jurisdictional discovery dispute was not a waiver); *Angelou*, 33 S.W.3d at 276 (filing Rule 11 agreement with court before assertion of special appearance was not a waiver). In this case, Geoff filed the motion to quash individually on a procedural matter. Knight Corp. did not seek affirmative relief from the court through Geoff's motion. The trial court correctly determined that the motion did not constitute a general appearance on behalf of Knight Corp.

Susana next argues that Knight Corp. waived its special appearance by engaging in discovery inconsistent with its special appearance. The supreme court held that a trial court's resolution of discovery matters related to the special appearance does not amount to a general appearance by the party contesting jurisdiction. *Trejo*, 142 S.W.3d at 307. Therefore, Knight Corp. did not waive its special appearance.

5

## IV. Standard of Review

Determining whether a trial court has personal jurisdiction over a defendant presents a question of law subject to *de novo* review. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident within the provisions of the Texas long-arm statute. *Id.*; *Cerbone v. Farb*, 225 S.W.3d 764, 766–67 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The burden then shifts to the nonresident defendant to negate all bases of personal jurisdiction asserted by the plaintiff. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).

Trial courts frequently must resolve fact questions before deciding the jurisdictional question. *BMC Software*, 83 S.W.3d at 794. If the trial court does not sign findings of fact and conclusions of law, all facts necessary to support the trial court's ruling and supported by the evidence are implied in favor of the trial court's decision. *Id.* at 794–95. When the appellate record includes the reporter's record and the clerk's record, parties may challenge the legal and factual sufficiency of these implied findings. *Id.* If the appellate court determines that the trial court's findings are supported by sufficient evidence, or if the material facts are undisputed, then the appellate court decides as a matter of law whether those facts negate all bases for personal jurisdiction. *Id.*

## V. Special Appearance—Applicable Law

Texas courts may not exercise personal jurisdiction over a nonresident defendant unless federal due process requirements and the Texas long-arm statute are satisfied. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1) (Vernon 2008); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 412–13 (1984). The Texas long-arm statute authorizes personal jurisdiction over a nonresident defendant who "does business" in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042; *see also Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). The statute's requirements are satisfied if the exercise of personal jurisdiction comports with federal due process requirements. *See Guardian*

*Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

Federal due process requirements are satisfied if (1) the nonresident defendant has "minimum contacts" with Texas; and (2) the exercise of personal jurisdiction over the nonresident defendant does not offend "traditional notions of fair play and substantial justice." *See Helicopteros*, 466 U.S. at 412–13; *Moki Mac*, 221 S.W.3d at 575. Minimum contacts are sufficient when a nonresident defendant " 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' " *Moki Mac*, 221 S.W.3d at 575 (*quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

## A. Minimum Contacts

To determine whether a nonresident defendant has sufficient minimum contacts with Texas to support the exercise of personal jurisdiction, the court must determine whether the nonresident defendant "purposefully availed" itself of the privilege of conducting business in Texas. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005).

Three key principles govern purposeful availment. *Michiana Easy Livin',* 168 S.W.3d at 785. First, the court considers the defendant's own actions; it does not consider the unilateral activity of another party. *Id.* Second, the court considers whether the defendant's actions were purposeful rather than "random, isolated, or fortuitous." *Id.* Third, the defendant must seek "some benefit, advantage, or profit by availing itself" of the privilege of doing business in Texas. *Id.* A defendant may purposefully avoid Texas by structuring its transactions to neither profit from Texas laws nor subject itself to personal jurisdiction. *Burger King*, 471 U.S. at 472; *Moki Mac*, 221 S.W.3d at 575. The defendant's contacts must be considered as a whole and not in isolation, focusing on the nature and quality of the contacts. *Guardian Royal*, 815 S.W.2d at 230 n. 11.

7

Minimum contacts are further analyzed in terms of (1) specific jurisdiction; and (2) general jurisdiction.

When specific jurisdiction is asserted, the court focuses on the relationship between the defendant, the forum, and the litigation. *Helicopteros*, 466 U.S. at 414; *Moki Mac*, 221 S.W.3d at 575–76. The cause of action must "arise from or relate to" the nonresident defendant's contacts with the forum. *Guardian Royal*, 815 S.W.2d at 228. Specific jurisdiction over a nonresident defendant is established if (1) the defendant's activities were purposefully directed to the forum state; and (2) there is a substantial connection between the defendant's forum contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

An assertion of general jurisdiction compels a more demanding minimum contacts analysis and requires a showing of substantial activities within the forum. *See Guardian Royal*, 815 S.W.2d at 228. The cause of action need not "arise from or relate to" the nonresident defendant's contacts with the forum. *See id.* Rather, general jurisdiction is "dispute blind" and requires contacts of a continuous and systematic nature. *See Helicopteros*, 466 U.S. at 414–16; *Guardian Royal*, 815 S.W.2d at 228. To determine whether a nonresident defendant had continuous and systematic contacts with Texas sufficient to support general jurisdiction, the court examines the defendant's contacts and forum-related activities up to the time suit was filed. *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 170 (Tex. 2007).

## B. Fair Play and Substantial Justice

Once the court concludes that the defendant has sufficient minimum contacts with the state to establish personal jurisdiction, the defendant bears the burden of establishing that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 411 (Tex. App.—Houston [14th Dist.] 1997, no writ).

To determine whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice, the court considers (1) the burden on the defendant; (2) the interests in the forum state in adjudicating the dispute; (3) the plaintiff's interests in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 476–77; *Guardian Royal*, 815 S.W.2d at 228. Only in rare cases will the exercise of personal jurisdiction not comport with fair play and substantial justice when a nonresident defendant has purposefully availed itself of the privilege of conducting business within a forum. *Guardian Royal*, 815 S.W.2d at 231.

## V. Analysis

### A. Specific Jurisdiction

The cause of action must arise out of or relate to the nonresident defendant's contact with the forum state to establish specific jurisdiction. *Id.* at 226. At the hearing before the trial court, Susana conceded that the court does not have specific jurisdiction over Knight Corp. Susana nonetheless asserts in response to Knight Corp.'s petition for writ of mandamus that Knight Corp., Knight Filter, and Geoff engaged in fraud intended to deprive Susana of a community asset.

To comport with due process, the exercise of long-arm jurisdiction over a defendant must rest not on a conceptual device; personal jurisdiction must be predicated on a determination that the non-resident, through a relationship with another, has purposefully availed itself of the privilege of conducting activities within the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). For a nonresident defendant's forum contacts to support the exercise of specific jurisdiction in Texas, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

9

Susana alleges that Knight Corp. committed a tort in Texas by entering into a stock purchase agreement, transferring additional Knight Corp. stock to Geoff, and misappropriating corporate funds. In her third amended petition, Susana alleges that Geoff, Knight Filter, and Knight Corp. engaged in "civil conspiracy" to deprive her of community property.

The supreme court has defined "civil conspiracy" as "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). Conspiracy as an independent basis for jurisdiction has been criticized as distracting from the ultimate due process inquiry, which focuses on whether the out-of-state defendant's contact with the forum was such that it should reasonably anticipate being haled into court in the forum state. *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995). Due process will not permit the plaintiff to use insignificant acts in the forum to assert jurisdiction over all co-conspirators. *Id*. The Texas Supreme Court has declined to recognize the assertion of specific jurisdiction over a nonresident defendant based solely on the effects or consequences of an alleged conspiracy with a resident in Texas. *Id*. The inquiry in this case is whether Knight Corp. purposefully established minimum contacts such as would satisfy due process.

Susana alleges that the stock purchase exchange between Geoff, Knight Filter, and Knight Corp. was fraudulent and intended to deprive her of community assets. She does not allege that these acts were committed in Texas. The stock purchase agreement was executed in Pennsylvania and intended to be performed in Pennsylvania. Susana alleges that a tort was directed toward her through the exercise of this agreement. Even if that were true, Susana has failed to allege that Knight Corp. committed any wrongdoing in Texas. Further, Susana has failed to allege that the execution of this agreement is connected to Knight Corp.'s alleged contacts with Texas. Although the trier of fact may ultimately conclude that Geoff, Knight Filter, and Knight Corp. engaged in fraud, the mere

10

commission of an act does not grant Texas courts jurisdiction over the actor. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 660 (Tex. 2010). Because there is no connection between Knight Corp., the forum, and the litigation, we find the trial court does not have specific jurisdiction over Knight Corp.

### B.  General Jurisdiction

The trial court found that it had jurisdiction due to Knight's "systemic and continuous business in the State of Texas[.]" For a corporation, the paradigm forum for the exercise of general jurisdiction is the place in which the corporation is fairly regarded as at home. *See* Brilmayer et. al., *A General Look at General Jurisdiction*, 66 TEX. L. REV. 723, 728 (1988). "A corporation's 'continuous activity of some sorts within a state,' *International Shoe* instructed, 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Goodyear Dunlop Tires Operations v. Brown*, ___ U.S. ___, 131 S.Ct. 2846, 2856 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S., 310, 318 (1945)). Mere purchases made in the forum state, even if occurring at regular intervals, are not enough to warrant a state's assertion of general jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions. *Helicopteros*, 466 U.S. at 418.

Susana alleged that Knight Corp. engaged in continuous and systematic activity in Texas through its website, product shipments, and bank account in Houston. Knight Corp. responded by presenting evidence that its sole place of business is in Pennsylvania; it is not authorized to do business in Texas, does not maintain an agent for service of process in Texas, does not maintain an office in Texas, does not conduct stockholder or directors' meetings in Texas, and does not own real estate in Texas. Knight Corp. maintains that its only connection with Texas is through its subsidiary Knight Filter. We review each of Susana's alleged contacts in turn.

### 1. Knight Corp.'s website

Susana argues that Knight Corp. maintains an interactive website that permits customers from Texas to "submit their specific needs and specifications via the website so that a representative from either location may contact them." Susana argues that Knight Corp.'s website is similar to the one discussed in *Experimental Aircraft Ass'n, Inc. v. Doctor*, 76 S.W.3d 496 (Tex. App.—Houston [14th Dist.] 2002, no pet.). *Doctor* determined that general jurisdiction existed based in part on the defendant's website. *Id.* at 506–07. We recognized that it is constitutionally permissible to exercise personal jurisdiction over one who conducts activity over the internet in appropriate circumstances. *Id.* at 506. The nature and quality of these internet contacts are evaluated on a "sliding scale." *Id.* (citing *Zippo Mfg. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997)). At one end of the spectrum, jurisdiction exists where one clearly does business over the internet by entering into contracts and repeatedly transmitting computer files. *Doctor*, 76 S.W.3d at 506; *see also CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265–66 (6th Cir. 1996). At the other end, personal jurisdiction is not appropriate where one "passively" posts information on the internet. *Doctor*, 76 S.W.3d at 507. Courts evaluate the "middle ground" contacts based on the level of interactivity and the commercial nature of the exchange of information. *Id.*

Susana argues that Knight Corp.'s website is interactive because potential customers can fill out a form on the website submitting the customer's specific needs and specifications so that a representative from Knight Corp. or Knight Filter may contact the customer. When a customer fills out the form, a representative of one of the companies contacts the customer depending on where the customer is located. This is not the type of interactive website contemplated in *Doctor*. In that case, the defendant's website contained search capabilities and had an interactive online shop with email purchasing capability. The website encouraged visitors to become members online and offered a personal identification number allowing them access to a members-only section. *Id.*

12

Knight Corp.'s website does not permit purchases online, nor does it offer the necessary level of interactivity. It is a marketing tool used by the company to direct potential customers to the proper subsidiary. We conclude that Knight Corp.'s website is passive, and does not support the trial court's finding of continuous and systemic contact.

## 2. Knight Corp.'s product purchases

Susana alleges that Knight Corp. purchased products in Texas. She points to 395 pages of invoices and purchase orders in the record directed to the Knight Corp. from Texas customers. The record contains several invoices from "Knight Corporation — Texas" directed toward Sparkling Clear Industries in Houston; B-Sides Plastics; Decotex, Inc.; and Industrial Fabric.

Paul Knight stated in his affidavit that Knight Corp. makes two products that Knight Filter does not make. If a Texas customer of Knight Filter wants one of those products, Knight Corp. provides the product to Knight Filter. These two products account for approximately .05 percent of Knight Corp.'s annual business. Further, Knight Corp. does not sell these products directly to Texas customers, but does so through Knight Filter in Texas.

General jurisdiction is premised on the notion of consent. By invoking the benefits and protections of a forum's laws, a nonresident defendant consents to being sued there. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 808 (Tex. 2002). When a nonresident defendant purposefully structures transactions to avoid the benefits and protections of a forum's laws, the legal concept of consent no longer applies. *Id.* Thus, title passing outside of Texas is a factor that weighs against a finding that Texas has general jurisdiction over a nonresident defendant. *Id.* In this case, Knight Filter's sales in Texas cannot weigh as a contact of Knight Corp. to support general jurisdiction.

### 3.     The Bank of America account

Susana alleges that Knight Corp. has maintained a bank account at the Bank of America in Houston, Texas for 18 years. The bank statements are sent to Susana and Geoff's home in Texas. Knight Corp. makes bi-monthly deposits to this account.

Knight Corp. presented evidence at the special appearance hearing that the Houston bank account belonged to Knight Filter but was improperly titled in the name of Knight Corp. Knight Corp. produced the original documents from NationsBank when the account was opened. Those documents reveal that the account was opened by Knight Filter. The bank statements and checks written on the account reveal that the account holder is Knight Filter. Knight Corp. makes bi-monthly deposits into the account for Knight Filter's use and payment of rent on Knight Filter's behalf. The deposits made by Knight Corp. into its subsidiary's account do not show purposeful contacts with Texas. *See Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 124 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.).

The evidence does not support the trial court's finding that Knight Corp.'s contacts with Texas were continuous and systematic so that they established general jurisdiction. *See Goodyear*, 131 S.Ct. at 2846; *Helicopteros*, 466 U.S. at 418; *Am. Type Culture*, 83 S.W.3d at 808.

### C.  Alter Ego

Susana's arguments can be read to allege that the trial court has general jurisdiction over Knight Corp. because it is Knight Filter's alter ego. Knight Corp. contends there is no evidence to support an implied finding of alter ego.

Personal jurisdiction may exist over a nonresident defendant if the relationship between the foreign corporation and its subsidiary corporation that does business in Texas is one that would allow the court to impute the subsidiary corporation's "doing business" to

the parent. *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983); *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978). The rationale for exercising jurisdiction is that the parent corporation exerts such domination and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction. *Hargrave*, 710 F.2d at 1159; *see also Conner*, 944 S.W.2d at 418. The party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation. *Walker*, 583 F.2d at 167; *Conner*, 944 S.W.2d at 418–19; *see also Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 375 (Tex. 1984).

To fuse the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. *Conner*, 944 S.W.2d at 418–19. The degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice. *See Hargrave*, 710 F.2d at 1160; *Conner*, 944 S.W.2d at 419; *see also Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975).

Jurisdictional veil-piercing and substantive veil-piercing involve different elements of proof. *PHC–Minden*, 235 S.W.3d at 174. For this reason, fraud — which is vital to piercing the corporate veil under section 21.223 of the Business Organizations Code — has no place in assessing contacts to determine jurisdiction. *Id.*

The party seeking to impute jurisdictional contacts of one corporation to another bears the burden of proof. *See BMC Software*, 83 S.W.3d at 798. This burden cannot be satisfied merely by establishing that the parent corporation dominates the subsidiary and exerts its control both commercially and financially in substantially the same way as it does over those selling branches or departments of its business. *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335 (1925). Rather, the parent and the subsidiary can be

15

merged for jurisdictional purposes only if the subsidiary is not maintained as a distinct corporate entity such that the separation between the parent and the subsidiary is "pure fiction." *Id*. at 337.

Susana alleges that the control exerted by Paul Knight, as president of Knight Corp., in the day-to-day workings and decision-making in Houston authorizes imputation of all Texas contacts to Knight Corp. and imbues Knight Corp. with the identity of a local Texas corporate entity. Susana argues there is a substantial overlap in clients, advertising, website, and banking as to blur any distinction between Knight Corp. and Knight Filter.

The record reflects that Knight Corp. and Knight Filter maintain separate headquarters and operational facilities. Paul Knight is president of Knight Corp.; Geoff is president of Knight Filter and vice president of Knight Corp. Officers at each company make decisions in the operation of each company. Before the formation of Knight Filter in 1992, Knight Corp. had customers in Texas; after Knight Filter's formation, those Texas customers became Knight Filter customers. As the parent corporation, Knight Corp. pays the expenses of Knight Filter. Accounts receivable for Knight Filter are routed through Knight Corp. but are kept separate on each corporation's books. Knight Corp. and Knight Filter each hire and fire their own employees. Knight Corp. has no control over Knight Filter's payroll. The two companies file consolidated tax returns because they share a centralized accounting system. Income and expenses are segregated. Knight Filter files a Texas franchise tax return based solely on its income and expenses.

Based on this record, Knight Corp. does not exercise the level of control over Knight Filter that is required to fuse these two entities for jurisdictional purposes. Therefore, the contacts of Knight Filter cannot be imputed to Knight Corp. to show continuous and systematic contacts with Texas.

16

## VI. Conclusion

Knight Corp. does not have continuous and systematic contacts with Texas, nor is there any basis for imputing Knight Filter's contacts to Knight Corp. We conditionally grant relator's petition for writ of mandamus. We are confident the trial court will vacate its order denying the special appearance, and will grant the relator's special appearance. The writ will issue only if the court fails to comply.


/s/     William J. Boyce
           Justice


Panel consists of Justices Seymore, Boyce, and Jamison.