**Reversed and Remanded and Opinion filed February 26, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00291-CV

---

**DENSO CORPORATION, Appellant**

**V.**

**KENNETH E. HALL, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JANICE H. BERG, DECEASED, KATHI BERG WALES, THERESA JOHANSON, KENNETH D. BERG JR., STEPHEN LESTER BERG, PHYLLIS BERG PELHAM AND JONATHAN DAVID BERG, EACH INDIVUALLY AND AS REPRESENTATIVE OF THE ESTATE OF KENNETH D. BERG, DECEASED, Appellees**

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-46922**

&

## NO. 14-12-00294-CV

## DENSO CORPORATION, Appellant

## V.

## HELEN MUBARAK-ASSAD, Appellee

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2011-06603**

&

## NO. 14-12-00351-CV

## DENSO CORPORATION, Appellant

## V.

## MAHMOUD A. DWEIB, Appellee

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2010-12590**

## O P I N I O N

This is the consolidated appeal of three products liability cases involving collisions allegedly caused by the unintended acceleration of Toyota vehicles. In three issues, appellant DENSO Corporation (DENSO Japan) complains of the trial court's denial of its special appearances. We reverse the trial court's order denying

DENSO Japan's special appearances and remand with instructions to dismiss the claims against DENSO Japan for lack of personal jurisdiction.

## *Background*

Appellees filed lawsuits against DENSO Japan and others for injuries sustained when engine electronic control units (ECUs) installed in appellees' Toyota vehicles purportedly malfunctioned and caused the unintended acceleration of the vehicles.[1]  Approximately 24 related cases were consolidated in the trial court as multi-district litigation (MDL).  The plaintiffs in the three cases on appeal are Hall, Dweib, and Mubarak-Assad.  DENSO Japan apparently is not a defendant in the other MDL cases.

In the *Hall* case, Janice and Kenneth Berg were killed when their Toyota Camry allegedly accelerated at a high rate of speed and Janice steered the Camry into a utility pole to avoid colliding with another vehicle.  Hall and others filed suit individually and as representatives of the Bergs' estate.  They alleged DENSO Japan, a Japanese corporation with its principal place of business in Japan, is "doing business in the State of Texas" and "designs and manufactures electronic components, sensors and or [ECUs] used in the gas pedal systems of Toyota vehicles that were placed into the stream of commerce and sold in the State of Texas, including the vehicle which is the subject of this cause of action."  Hall asserted causes of action against DENSO Japan for wrongful death, survival, products liability, negligence, breaches of contract and warranty, fraud, and conspiracy.

---

[1] The parties refer to the components that allegedly malfunctioned variously as ECUs, electronic throttle control systems, and accelerator pedals, but do not articulate the differences among these components, if any.  Any difference among these components is irrelevant to our analysis; for clarity, we refer to the components throughout this opinion as ECUs.

Dweib was seriously injured when his Camry allegedly accelerated, ran a red light, and collided with another vehicle. Dweib alleged "[DENSO Japan] is a Japanese corporation with its headquarters [in] . . . Japan" and is a manufacturer of ECUs "in many of the subject vehicles." Dweib asserted causes of action against DENSO Japan for products liability, negligence, failure to warn, breaches of express and implied warranties, and violations of the Texas Deceptive Trade Practices Act.

Mubarak-Assad was injured when she jumped out of her Toyota Tacoma after it allegedly accelerated, collided with another vehicle, and went off the roadway into a median area. Mubarak-Assad alleged "[DENSO Japan] is a Japanese corporation with its headquarters [in] . . . Japan" and alleged generally that the defendants manufactured, sold, distributed, and marketed Toyota vehicles containing defective ECUs that caused the vehicles to accelerate unexpectedly. Mubarak-Assad asserted causes of action against all defendants for products liability, negligence, breaches of express and implied warranties, and fraudulent concealment.

DENSO Japan is the Japanese parent of DENSO International America, Inc. (DENSO America) and DENSO Manufacturing Tennessee, Inc. (DENSO Tennessee). DENSO Japan filed special appearances in each of appellees' lawsuits, asserting that it did not sell ECUs "to [appellees] or any Texas company or person." DENSO Japan presented evidence that the subject ECUs were manufactured in the United States by DENSO Tennessee and sold in the United States by DENSO America to Toyota's San Antonio, Texas plant. DENSO Japan also presented evidence that it manufactures and sells ECUs in Japan to Toyota Motor Corporation of Japan, but DENSO Japan does not know where Toyota Motor Corporation of Japan ships vehicles equipped with ECUs manufactured by

4

DENSO Japan. DENSO Japan personnel visited Texas approximately 155 times over the ten years preceding the appeal. Most of these visits were unrelated to DENSO Japan's relationship with DENSO America, DENSO Tennessee, or Toyota; however, approximately 13 visits were made by DENSO Japan personnel to the Toyota plant in San Antonio between 2004 and 2009. One of these trips related to a quality control issue in Toyota Tundra ECUs. Also, DENSO Japan provided technical assistance to its United States subsidiaries that manufacture ECUs, such as DENSO Tennessee, in the United States.[2] After a hearing, the trial court denied the special appearances.

## *Discussion*

In three issues, DENSO Japan complains that the trial court erred in denying DENSO Japan's special appearances because (1) DENSO Japan did not sell or manufacture the subject ECUs, defeating specific jurisdiction; (2) DENSO Japan does not have substantial and continuous corporate operations in Texas such that it could be fairly said to be "at home" in Texas, defeating general jurisdiction; and (3) DENSO Japan did not waive its right to challenge personal jurisdiction in the underlying lawsuits by answering and asserting counterclaims in another lawsuit filed in a Texas federal court.[3] We hold that DENSO Japan's contacts with Texas were insufficient to confer either specific or general jurisdiction over DENSO Japan in Texas.

---

[2] DENSO Japan's corporate representative was deposed. He described DENSO Japan's role in this assistance as "support in order to manufacture products at those manufacturing companies."

[3] On appeal, appellees expressly waive their argument that DENSO Japan waived its right to challenge personal jurisdiction in the underlying lawsuits by asserting counterclaims in the federal lawsuit. Thus, we do not address DENSO Japan's third issue.

5

## I.     Standards of Review

Whether a court has personal jurisdiction over a defendant is a question of law.  *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805-06 (Tex. 2002).  The trial court's decision to grant or deny a special appearance is subject to de novo review on appeal.  *Id.* at 806; *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).  The trial court did not issue findings of fact or conclusions of law.  Therefore, all facts necessary to support the trial court's ruling and supported by the evidence are implied in favor of the trial court's decision. *Marchand*, 83 S.W.3d at 795.  Parties can challenge the legal and factual sufficiency of these implied factual findings.  *Id.*

In conducting a legal-sufficiency analysis, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it.  *See City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005).  We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not.  *See id.* at 827.  We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue.  *See id.*  Personal jurisdiction over nonresident defendants satisfies the constitutional requirements of due process when the defendant has purposefully established minimum contacts with the forum state, and the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice.  *Marchand*, 83 S.W.3d at 795; *Meader v. IRA Res., Inc.*, 178 S.W.3d 338, 343 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  A defendant's minimum contacts may give rise to either specific jurisdiction or general jurisdiction.  *Coleman*, 83 S.W.3d at 806; *Meader*, 178 S.W.3d at 344.

6

## II.    Appellees' Burden to Plead Sufficient Jurisdictional Facts

DENSO Japan argues appellees have not pleaded sufficient jurisdictional facts.  A plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the terms of the Texas long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas).  *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Coleman*, 83 S.W.3d at 807.  The nonresident defendant then assumes the burden of negating all bases of jurisdiction alleged.  *Coleman*, 83 S.W.3d at 807; *Meader*, 178 S.W.3d at 343.  Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading.  *Kelly,* 301 S.W.3d at 658.  If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute, proof of the defendant's nonresidency is sufficient to negate personal jurisdiction.[4]  *Id.*; *Specht v. Dunavant*, 362 S.W.3d 752, 755 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant "doing business" in Texas, and allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will allow."  *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010) (citing Tex. Civ. Prac. & Rem. Code § 17.042); *Coleman*, 83 S.W.3d at 806.  The statute covers a nonresident who "commits a tort in whole or in part in [Texas]."  Tex. Civ. Prac. & Rem. Code § 17.042; *see also Kelly*, 301

---

[4] DENSO Japan presented evidence that it (1) is organized under the laws of Japan with its principal place of business there; (2) is not licensed to do business in Texas; (3) does not have a registered agent for service in Texas; (4) has never had offices in Texas or owned, leased or controlled property in Texas; (5) does not design ECUs in Texas; (6) did not sell any components to any Texas companies or person; (7) has no manufacturing plants in North America; and (8) does not market or advertise in Texas.

S.W.3d at 659.[5]

> Hall averred that the trial court had jurisdiction over DENSO Japan because:

> [DENSO Japan] is doing business in the State of Texas within the meaning of Section 17.042 of the Texas Civ. Prac. & Rem. Code. Based upon information and belief, [DENSO Japan] designs and manufactures electronic components, sensors and/or [ECUs] used in the gas pedal systems of Toyota vehicles that were placed into the stream of commerce and sold in the State of Texas, including the vehicle which is the subject of this cause of action.

Dweib and Mubarak-Assad averred that DENSO Japan "is a Japanese corporation." Dweib also averred that DENSO Japan manufactured ECUs in "many of the subject vehicles" as follows:

> In another [Field Technical Report] from one of the technicians in Hong Kong, dated September 28, 2007, a similar [unintended acceleration] event was reported with a targeted investigation of the [ECU]. There were no DTCs [DTC is not defined] recorded and the root cause was unknown. The resulting report by [DENSO Japan], **the manufacturer of the accelerator pedals in many of [the ECUs]**, confirmed that they could not find any abnormalities on any accelerator components. In the corresponding reply from [Toyota Motor Corporation], dated April 21, 2008, Toyota acknowledged that this was an issue that needed to be monitored.

(Emphasis added.) Dweib defined "subject vehicles" as vehicles "Toyota manufactured, distributed and sold . . . with an [ECU]." Mubarak-Assad averred that the defendants in the *Mubarak-Assad* case, including DENSO Japan, manufactured, sold, distributed, and marketed Toyota vehicles containing defective ECUs that caused the vehicles to accelerate unexpectedly.

---

[5] The statute also extends to other acts that may constitute doing business in Texas. Tex. Civ. Prac. & Rem. Code § 17.042.

Hall alleged that DENSO Japan was doing business in Texas by manufacturing defective ECUs, including the one that allegedly caused Hall's accident, and placing them in the stream of commerce to be sold in Texas.[6] We conclude Hall pleaded jurisdictional facts that DENSO Japan committed a tort in whole or in part in Texas. *See Kelly*, 301 S.W.3d at 659-60 (holding plaintiff was required to allege defendants committed tortious acts in Texas to satisfy his initial burden of pleading jurisdictional facts); *see also Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 847 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding plaintiff's allegation that defendants committed torts in Texas was sufficient to bring defendants under the long-arm statute).[7] Accordingly, Hall pleaded allegations sufficient to bring appellees within the terms of the Texas long-arm statute, and the burden shifted to DENSO Japan to negate every basis for jurisdiction alleged by Hall. *See Horizon Shipbuilding, Inc.*, 324 S.W.3d at 847.

We cannot, however, reach the same conclusion with regard to Dweib and Mubarak-Assad. They did not allege that defective ECUs manufactured by DENSO Japan were placed in the stream of commerce and made their way into Texas or that DENSO Japan otherwise was doing business in Texas. They merely alleged, at best, that DENSO Japan manufactured ECUs that made their way into some Toyota vehicles. They did not allege that DENSO Japan committed any act in Texas. Thus, Dweib and Mubarak-Assad did not meet their burden to allege facts bringing DENSO Japan within the terms of the Texas long-arm statute. *See Kelly*, 301 S.W.3d at 661. Because Dweib and Mubarak-Assad's pleadings lack

---

[6] Hall pleaded additional jurisdictional facts, discussed *infra*.

[7] These allegations satisfied the pleading requirements for both specific and general jurisdiction. *See Huynh v Nguyen*, 180 S.W.3d 608, 622 & n.6 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (noting allegation that defendant "is doing business in Texas" satisfied pleading requirement for both specific and general jurisdiction).

Texas-specific allegations, DENSO Japan negated all jurisdictional bases by proving it is not a Texas resident. *See id*. However, even if Dweib and Mubarak-Assad had pleaded sufficient jurisdictional facts, the trial court did not have jurisdiction over their claims against DENSO Japan, as set forth below in our analysis of the jurisdictional facts asserted by Hall.

### III. Specific Jurisdiction: No Substantial Connection between DENSO Japan's Contacts with Texas and the Facts

In its first issue, DENSO Japan argues the trial court could not exercise specific jurisdiction over DENSO Japan because it did not manufacture or sell the ECUs in appellees' vehicles and there is no substantial connection between DENSO Japan's contacts with Texas and the operative facts of the underlying cases. When specific jurisdiction is asserted, our minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991); *Meader*, 178 S.W.3d at 344. Specific jurisdiction over a nonresident defendant is established if the defendant has purposely availed itself of the privilege of conducting activities with the forum state, and plaintiff's cause of action arises from or relates to those contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007); *Coleman*, 83 S.W.3d at 806. The defendant's activities, either direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *Coleman*, 83 S.W.3d at 806; *Meader*, 178 S.W.3d at 345.

The "arises from or is related to" requirement of specific personal jurisdiction requires a "substantial connection" between the nonresident defendant's conduct purposefully directed at Texas and the "operative facts of the

litigation." *Moki Mac*, 221 S.W.3d at 584–85.  To identify the operative facts of the litigation, we select those facts that would be the focus of the trial.  *See id.* at 585; *Smart Call, L.L.C. v. Genio Mobile*, 349 S.W.3d 755, 760 (Tex. App.— Houston [14th Dist.] 2011, no pet.).

Appellees' causes of action are focused on the allegation that DENSO Japan manufactured defective ECUs that malfunctioned and caused appellees' injuries. DENSO Japan presented evidence that it did not make or sell the ECUs in any of the vehicles involved in the underlying cases, "design any components in Texas," or "sell any components to [appellees] or any Texas company or person."[8] Appellees have presented no evidence to the contrary.[9]  Instead, appellees argue that the following additional conduct of DENSO Japan gave rise to specific jurisdiction: marketing to the Toyota Texas plant, "establish[ing] channels for providing regular advice to . . . Toyota in [Texas]," visiting Texas residents and companies, and "address[ing] ECU issues at Toyota's Texas plant."

DENSO Japan's corporate representative Akira Hasegawa testified, without elaborating, that DENSO Japan provides "technical support" to manufacturing companies in North America, including DENSO Tennessee.  Hasegawa stated, "It is my understanding the assistance that [DENSO Japan] provides is the support in

---

[8] DENSO Japan presented the affidavit of Akira Hasagawa, the former General Manager of the Legal Department for DENSO Japan, attesting to these facts.

[9] DENSO Japan admits it manufactures ECUs in Japan and sells them to Toyota Motor Company of Japan and it sometimes sells parts to its subsidiaries in the United States by contract specifying F.O.B. Nagoya, Japan, but components handled by DENSO America are usually manufactured in the United States.  The fact that some ECUs manufactured by DENSO Japan may have made it into the Texas stream of commerce is not enough to confer specific jurisdiction on the Texas court.  *See Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010) ("[A]wareness 'that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.'") (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (plurality op.)).

11

order to manufacture products at those manufacturing companies." He further stated that DENSO Japan does not provide customer support to Texas residents with respect to any components made by DENSO Japan and products made by DENSO Japan are not installed in vehicles that are manufactured at the Toyota Texas plant.

The Toyota Texas plant is a customer of DENSO America, and, according to Hasegawa, DENSO America personnel would sometimes ask DENSO Japan employees to accompany them on plant visits. Hasegawa testified that the purpose of the visits "was to tour the factory and also make a courtesy visit." He explained, "It is very typical of Japanese companies to make courtesy visits just to greet and exchange greetings." Hasegawa compiled a chart of all business trips DENSO Japan personnel made to Texas from February 2002 through February 2011, which included approximately a dozen visits to the Toyota Texas plant from 2004 through 2009. The chart contains a column describing the "purpose" of each trip. Most of these entries simply say, "Visit," "Visit to a planned site of [Toyota]," or "A courtesy call." Other entries are more specific, such as, "Check . . . preparation for production of global core vehicle in North America." Others involve Toyota Tundras, as follows: "Building efficiency and quality of air-conditioning for Tundra," and "On-site check of assembly of trial production of navigation for Tundra." Three of the business trips, in June, November, and December 2006, pertained to ECU issues in Toyota Tundras: "Actual vehicle check of main body ECU for Tundra at the request of [DENSO Tennessee]," "Check & replacing [sic] engine ECU for Tundra at the request of [DENSO Tennessee]," and "To explain the future action to obtain understanding of the quality problem of engine ECU for Tundra at the request of [DENSO Tennessee]."

Appellees argue "[DENSO Japan] spent significant time addressing an [ECU] quality problem at Toyota's . . . Texas [p]lant," "DENSO Tennessee requested DENSO Japan investigate and address the problem occurring in Texas . . . where the particular ECUs were manufactured and where DENSO Japan assisted in the design and manufacture of products, which would include these ECUs." As an initial matter, no evidence was presented that DENSO Japan "assisted in the design and manufacture" of the ECUs in the Toyota Tundras addressed above. More importantly, assuming for argument's sake that DENSO Japan did so, there is no evidence that the quality control issues in these ECUs related to unintended acceleration, which, given the pleadings in this case, is how the occupants of Toyota vehicles allegedly were injured in the underlying cases and will be the focus at trial. *See Moore v. Pulmosan Safety Equip. Corp.*, 278 S.W.3d 27, 38 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (concluding, in products liability action, that no substantial connection existed between defendant's contacts with Texas and operative facts of litigation because focus of trial would be on injury allegedly caused in Louisiana by a defective product that was manufactured in New York).

None of these activities establish contacts that bear a substantial connection to the operative facts of this litigation. *See Info. Servs. Grp., Inc. v. Rawlinson*, 302 S.W.3d 392, 401 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding defendants' ownership interest in Texas company that was not party to lawsuit was not relevant to specific jurisdiction); *Yfantis v. Balloun*, 115 S.W.3d 175, 183 (Tex. App.—Fort Worth 2003, no pet.) (holding licensing agreement between defendant and nonparty Texas resident was not relevant to specific jurisdiction). Contacts with Texas that are unrelated to the claims asserted are insufficient to establish specific jurisdiction. *Rawlinson*, 302 S.W.3d at 401.

We conclude that a substantial connection did not exist between DENSO Japan's contacts with Texas and the operative facts of the underlying cases. Based upon the undisputed evidence, we conclude the evidence is legally insufficient to support the trial court's implied finding that it could exercise personal jurisdiction over DENSO Japan based on specific jurisdiction.

We sustain DENSO Japan's first issue.[10]

## IV.   No General Jurisdiction

In its second issue, DENSO Japan argues it negated all bases for general jurisdiction because it presented evidence that it could not fairly be regarded as "at home" in Texas. Unlike specific jurisdiction, general jurisdiction allows a forum to exercise jurisdiction over a nonresident defendant even if the cause of action did not arise from or relate to the defendant's contacts with the forum. *Coleman*, 83 S.W.3d at 806–07; *Meader*, 178 S.W.3d at 349. An exercise of general jurisdiction is constitutionally permissible when the defendant's business contacts with the forum are "continuous and systematic," which is a more demanding minimum-contacts analysis than that of specific jurisdiction. *See Coleman*, 83 S.W.3d at 807; *Meader*, 178 S.W.3d at 349. "For a corporation, the paradigm forum for the exercise of general jurisdiction is the place in which the corporation is fairly regarded as at home." *Knight Corp v. Knight*, 367 S.W.3d 715, 727 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011)). "A corporation's 'continuous

---

[10] Citing *Moki Mac*, appellees argue that we should look to conduct beyond the business transaction at issue to determine whether DENSO Japan purposefully directed action toward Texas. *See Moki Mac*, 221 S.W.3d at 577. ("[A]dditional conduct of the defendant may indicate an intent or purpose to serve the market in the forum state."). Even if a nonresident has purposefully availed itself of the benefits of conducting business in Texas, however, no specific jurisdiction exists over the nonresident unless the cause of action "arises from or is related to an activity conducted within the forum." *Marchand*, 83 S.W.3d at 796.

activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Brown*, 131 S. Ct. at 2856 (citing *Int'l Shoe Co. v. State of Washington, Office of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945)); *Knight*, 367 S.W.3d at 727.

As set forth above, DENSO Japan presented evidence that it is organized under the laws of Japan with its principal place of business there. Even if these facts were not enough to show Japan is DENSO Japan's home, no evidence indicates Texas is its home, since it (1) is not licensed to do business in Texas; (2) does not have a registered agent for service in Texas; (3) has never had offices in Texas or owned, leased, or controlled property in Texas; (4) does not design, sell, or manufacture products in Texas; (5) did not sell any products to any Texas companies or person; and (6) does not advertise (or market) in Texas.[11] *See Mikuni Corp. v. Foster*, No. 01-11-00383-CV, 2012 WL 170603, at *10 (Tex. App.—Houston [1st Dist.] Jan. 19, 2012, no pet.) (mem. op.) (citing *Brown*, 131 S. Ct. at 2853-54). Appellees argue DENSO Japan engaged in continuous and systematic activities in Texas by making multiple trips to Texas, entering into two contracts with Texas companies, and providing "technical, manufacturing, business, and legal support" to its subsidiaries in the United States.

**Trips to Texas**. The chart that Hasegawa compiled contains 155 entries, which reflect visits to Texas by DENSO Japan personnel over a ten-year period. Multiple trips to Texas generally will not support general jurisdiction. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 170 (Tex. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417-18 (1984) ("[P]urchases and related trips, standing alone, are not a sufficient basis for a

---

[11] As set forth above, appellees assert that DENSO Japan marketed in Texas, but point to no evidence of marketing, except perhaps the "courtesy call" business trips to Toyota's Texas plant.

State's assertion of [general] jurisdiction."")). We are not concerned with the quantity of the contacts; instead, we are concerned with the nature and quality of those contacts. *See Coleman*, 83 S.W.3d at 809-10. These trips essentially fall into five categories: (1) trips to the Toyota Texas plant, discussed above, (2) meetings with a company called Free Scale that manufactures semiconductors, (3) one meeting with a company, Lennox, to negotiate a contract for DENSO Japan's Japanese subsidiary, DENSO Wave, to manufacture air conditioning sensors for Lennox, (4) meetings with Texas Instruments in Dallas in connection with a contract between DENSO Japan and Texas Instruments, and (5) trips to a Texas university for test-taking and research. DENSO Japan presented the following evidence with regard to each category.

**Toyota Texas Plant**. The purpose of most of these trips "was to tour the factory and . . . make a courtesy visit." The purpose of the other visits was to address issues with the Toyota Tundra, including quality control issues with ECUs in Tundra vehicles.

**Meetings with Free Scale**. DENSO Japan formed a consortium with Free Scale and another company to exchange information regarding research for next generation air-bag technology and to establish standards for that technology. Some meetings were held in Texas, and some were in Arizona.

**Meeting with Lennox**. Hasegawa attended this meeting to negotiate the contract with Lennox on behalf of DENSO Wave regarding the manufacture of air-conditioning sensors.

**Meetings with Texas Instruments**. DENSO Japan met with Texas Instruments to discuss a patents cross-licensing agreement that allowed both companies to "design and sell semiconductors without dispute from each other." DENSO Japan did not manufacture any products to sell to Texas Instruments.

16

**Trips to University**. One employee of DENSO Japan traveled to a university in Texas to take an entrance exam, and one employee traveled to a university in Texas to conduct research. No other evidence was presented regarding these trips.

We conclude that these trips, although numerous, do not demonstrate that DENSO Japan can fairly be regarded as being at home in Texas because the trips do not establish that DENSO Japan had a general business presence in Texas. *See Brown*, 131 S. Ct. at 2856 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-48 (1952) (holding general jurisdiction existed over Philippine company because its base of operations had been relocated to Ohio during Japanese occupation of the Philippines), as "textbook case of general jurisdiction properly exercised over a foreign corporation"); *see also PHC-Minden*, 235 S.W.3d at 170; *Foster*, 2012 WL 170603, at *10 ("The fact that [defendant's] officers, directors, and employees have occasionally visited Texas and the United States does not subject [defendant] to general jurisdiction."). We must, however, consider these trips in the context of all of DENSO Japan's contacts with Texas to determine if DENSO Japan had a general business presence in Texas. *See Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 219-20 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

**Contracts with Texas Corporations**. Appellees contend DENSO Japan's contracts with Texas Instruments and a company called ACTIS Manufacturing Ltd. support general jurisdiction. Entering into contracts with Texas corporations will not support general jurisdiction when performance under the contract by the nonresident defendant is outside the state. *See Coleman*, 83 S.W.3d at 808; *Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.*, 130 S.W.3d 170, 175 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("[N]egotiating and signing a contract in Texas is

17

insufficient if performance takes place elsewhere."). Even limited performance in the forum state under a contract generally will not support general jurisdiction. *See Helicopteros*, 466 U.S. at 416 (holding there was no general jurisdiction even though defendant sent its chief executive officer to Texas for a contract negotiation session, accepted into its bank account checks drawn on a bank in Texas, purchased $4 million of goods and equipment from a company in Texas, and sent employees to Texas for training and technical consultation); *PHC-Minden*, 235 S.W.3d at 171 (holding agreement requiring Louisiana-licensed physicians (located in Texas) to provide teleradiology services for which nonresident defendant supplied the necessary equipment in exchange for $1600 per month did not support general jurisdiction); *Reid*, 130 S.W.3d at 217-18 (holding sending two employees to work in Texas and using an office in Texas for limited purposes did not support finding of general jurisdiction). Constructing contracts to avoid benefiting from Texas laws also weighs against the existence of general jurisdiction. *Coleman*, 83 S.W.3d at 810.

The Texas Instruments contract, as set forth above, was a patents cross-licensing agreement that allowed both companies to "design and sell semiconductors without dispute from each other." Thus, it did not require performance by DENSO Japan in Texas. Moreover, the agreement contains a choice of law provision making New York law applicable to the agreement. *See All Star Enter., Inc. v. Buchanan*, 298 S.W.3d 404, 414 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting choice of law provisions are properly considered in minimum-contacts analysis for general jurisdiction); *see also Coleman*, 83 S.W.3d at 810.

ACTIS was a joint venture between DENSO America and a trading company for Toyota in North America.[12] DENSO Japan entered into a "license and technical assistance agreement" with ACTIS, which allowed ACTIS to request technical support from DENSO Japan. DENSO Japan provided no services to ACTIS under the agreement.

We conclude neither the nature of these contracts nor the performance thereunder indicate DENSO Japan purposely directed its business activity at Texas. *See Reid*, 130 S.W.3d at 219 (holding nonresident defendant did not submit to general jurisdiction of Texas courts merely by executing contract with resident).

**Technical, Manufacturing, Business, and Legal Support to U.S. Subsidiaries**. Appellees argue "[DENSO Japan's] U.S. subsidiary companies rely on [DENSO Japan] for technical, manufacturing, business, and legal support, which have impacted the Texas forum." DENSO Japan has technical and license agreements with its United States subsidiaries, including DENSO Tennessee, which manufacture components that eventually are sold to Toyota. There is no evidence that DENSO Japan had a general business presence *in Texas* through its efforts to support any of its United States subsidiaries. *See Reid*, 130 S.W.3d at 220.

Even when amassed, DENSO Japan's contacts simply are not "continuous and systematic general business contacts" sufficient to support general jurisdiction.

---

[12] Appellees suggested at Hasegawa's deposition that DENSO Japan was a party to the joint venture, based on an annual report referring to "DENSO" as a member of ACTIS. Hasegawa testified, "That is not accurate. . . . I have researched and then confirmed that ACTIS is a joint venture company. However, the parties for the joint venture company is [sic] not as you have said. . . . [T]he actual party for the joint venture is Denso . . . America." He clarified that the annual report was translated into English from Japanese and "quite often in translation the . . . corporation's identity is not clearly or specifically written or differentiated in the translation." The record does not show what kind of a joint venture ACTIS was, but it dissolved in January 2011.

*See PHC–Minden*, 235 S.W.3d at 171. We conclude that the evidence is legally insufficient to support the trial court's implied finding that it could exercise general jurisdiction over DENSO Japan. *See Helicopteros*, 466 U.S. at 416; *PHC–Minden*, 235 S.W.3d at 170–71 (holding that isolated trips to Texas, more than $1,500,000 in purchases from Texas vendors, and two contracts with Texas entities were not substantial enough to support general jurisdiction); *CSR, Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996) (concluding that there was no general jurisdiction and stating there must be an indication that defendant intended to serve the Texas market before personal jurisdiction can be found); *Reid*, 130 S.W.3d at 130 (holding there was no general jurisdiction when there was no evidence that defendants advertised or promoted their goods or services in Texas, solicited business in Texas, sold their goods or services to a Texas entity, established a general business office or general business presence in Texas, or targeted Texas markets). We sustain DENSO Japan's second issue.

## Conclusion

We reverse the trial court's order denying DENSO Japan's special appearances and remand with instructions to dismiss the claims against DENSO Japan for lack of personal jurisdiction.


/s/     Martha Hill Jamison
        Justice

Panel consists of Justices Frost, Christopher, and Jamison.

20