ACCEPTED
01-14-01014-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/25/2015 5:29:16 PM
CHRISTOPHER PRINE
CLERK

**No. 01-14-01014-CV**

_____

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/25/2015 5:29:16 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS FOR THE
FIRST DISTRICT OF TEXAS AT HOUSTON

_____

LETICIA LOYA,

*Appellant*,

v.

IAN TAYLOR, JACOBUS STERKEN, STICHTING TINSEL GROUP,
VITOL HOLDING II S.A., AND TINSEL GROUP, S.A.,

*Appellees.*

_____

**BRIEF OF APPELLEES**

_____

On Appeal from the 190th District Court, Harris County, Texas
Trial Court Cause No. 2012-33464

_____

**VINSON & ELKINS L.L.P.**
Patrick W. Mizell
Attorney-In-Charge
Texas Bar No. 14233980
Catherine B. Smith
Texas Bar No. 03319970
Deborah C. Milner
Texas Bar No. 24065761
Jaclyn M. Lynch
Texas Bar No. 24083429
1001 Fannin, Suite 2500
Houston, Texas 77002-6760
Telephone: 713.758.2932
pmizell@velaw.com; csmith@velaw.com;
cmilner@velaw.com; jaclynlynch@velaw.com

*Attorneys for Appellees Ian Taylor, Jacobus Sterken, Stichting Tinsel Group,*
*Vitol Holding II S.A., and Tinsel Group, S.A.*

ORAL ARGUMENT CONDITIONALLY REQUESTED          March 25, 2015

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ........................................... viii

STATEMENT OF THE CASE...........................................................................ix

ISSUES PRESENTED........................................................................................x

STATEMENT OF THE FACTS .........................................................................1

SUMMARY OF THE ARGUMENT ...................................................................3

STANDARD OF REVIEW .................................................................................5

ARGUMENT ......................................................................................................6

I.  Loya Has Not Pled That Taylor or Sterken Committed an Act in Texas, and They Therefore Defeated Jurisdiction by Proof of Non-Residence. .................................................................................................6

    A.  Under Texas law, the plaintiff has the initial burden to plead jurisdictional facts as to each defendant..................................................6

    B.  Loya did not plead sufficient jurisdictional facts as to Sterken and Taylor, and Sterken and Taylor proved non-residence in Texas.........................................................................................................7

II.  A Texas Court Does Not Have General Jurisdiction Over the Vitol Defendants. .........................................................................................................8

    A.  A defendant must be "at home" in the forum for general jurisdiction to exist. ............................................................................8

    B.  Ian Taylor is not subject to general jurisdiction in Texas. ...................11

        1.  Taylor's contacts with Texas as an officer, employee, or agent of a company cannot be attributed to him individually. ...............................................................................11

i

2.    The other alleged contacts with Texas do not establish general jurisdiction over Taylor....................................13

C.    Tinsel Group, S.A. is not subject to the general jurisdiction of Texas courts...................................................................14

1.    Having and communicating with Texas-based directors does not subject a company to general jurisdiction in Texas. ..................................................................14

2.    Entering into contracts with Texas residents does not establish general jurisdiction...................................15

3.    The relief Tinsel sought from a Houston federal court does not establish general jurisdiction. ...................17

D.    Jacobus Sterken is not subject to the general jurisdiction of Texas courts...................................................................17

1.    Sterken's former directorships of two Texas companies do not subject him to general jurisdiction in Texas.................17

2.    Sterken's occasional trips to and communications with Texas do not subject him to general jurisdiction in Texas. ......18

3.    The contracts Sterken signed and communications he sent on behalf of Vitol entities are not Texas contacts attributable to Sterken. ...........................................18

E.    Stichting Tinsel is not subject to the general jurisdiction of Texas courts...................................................................19

F.    VHIISA is not subject to the general jurisdiction of Texas courts. ..................................................................20

III.    A Texas Court Does Not Have Specific Jurisdiction Over the Vitol Defendants for Loya's Claims...................................................21

A.    Specific Jurisdiction .........................................................21

B.    Taylor's London deposition is not a Texas contact. ..........24

C. The shareholder agreements are not substantially connected to the operative facts of the case. ...........................................................25

IV. The Trial Court Did Not Err in Denying Loya's Motion for Continuance. .................................................................................26

    A. A plaintiff seeking a continuance of a special appearance hearing must demonstrate that the discovery is "essential" to the plaintiff's opposition. ...........................................................26

    B. Loya had ample time to conduct discovery........................................27

    C. The documents requested are unnecessary or irrelevant to the establishment of jurisdictional facts....................................................29

CONCLUSION ............................................................................................32

CERTIFICATE OF COMPLIANCE..........................................................35

CERTIFICATE OF SERVICE ...................................................................36

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Tropiques, Sprl v. N. & W. Ins. Co.*,
No. CIV.A. H-13-1438, 2014 WL 1323046 (S.D. Tex. Mar. 31, 2014).........21

*Aronson v. Celebrity Cruises, Inc.*,
Case No. 12–CV–20129, 2014 WL 3408582 (S.D. Fla. May 9, 2014) ..........21

*Barriere v. Juluca*,
No. 12-23510-CIV, 2014 WL 652831 (S.D. Fla. Feb. 19, 2014) ...................21

*BMC Software Belgium, N.V. v. Marchand*,
83 S.W.3d 789 (Tex. 2002) ........................................................... 5, 6, 25, 28

*Bryan v. Gordon*,
384 S.W.3d 908 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ...........6, 14

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).......................................................................................6

*CSR Ltd. v. Link*,
925 S.W.2d 591 (Tex. 1996) ........................................................................7

*Curocum Energy LLC v. Young-Sub Shim*,
416 S.W.3d 893 (Tex. App.—Houston [1st Dist.] 2013, no pet.)...................25

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014)........................................ 9, 13, 15, 16, 21, 30

*Denso Corp. v. Hall*,
396 S.W.3d 681 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ................15

*Dowdy v. Miller*,
122 S.W.3d 816 (Tex. App.—Amarillo 2003, no pet.)..................................19

*Favour Leading, LLC v. Mulligan*,
No. 05-13-01000-CV, 2014 WL 4090130 (Tex. App.—Dallas Aug. 19,
2014, no pet.) (mem. op.) ..........................................................................17

iv

*GlobeRanger Corp. v. Software AG,*
  2013 WL 1499357 (N.D. Tex. Apr. 12, 2013) (mem. op.) .............................21

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  131 S. Ct. 2846 (2011)................................................................. 9, 13, 18

*Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,*
  815 S.W.2d 223 (Tex. 1991) ........................................................ 6, 7, 8, 22

*Helicopteros Nacionales de Columbia v. Hall,*
  466 U.S. 408 (1984)..........................................................................8, 22

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
  No. C-07-5944-SC, 2014 WL 1091044 (N.D. Cal. Mar. 13, 2014)...............10

*In re Stern,*
  321 S.W.3d 828 (Tex. App.—Houston [1st Dist.] 2010, orig.
  proceeding) .......................................................................................29

*In re Taylor,*
  401 S.W.3d 69 (Tex. App.—Houston [14th Dist.] 2009) (orig.
  proceeding) .......................................................................................13

*J. McIntyre Mach., Ltd. v. Nicastro,*
  131 S. Ct. 2780 (2011)..........................................................................9

*J.A. Riggs Tractor Co. v. Bentley,*
  209 S.W.3d 322 (Tex. App.—Texarkana 2006, no pet.) ........................ 16, 26

Johnson v. Fourth Court of Appeals,
  700 S.W.2d 916 (Tex. 1985) ...................................................................6

*Kelly v. Gen. Interior Constr., Inc.,*
  301 S.W.3d 653 (Tex. 2010) ...................................................................7

*Knight v. Knight,*
  367 S.W.3d 715 (Tex. 2012) ..................................................................10

*Michiana Easy Livin' Country, Inc. v. Holten,*
  168 S.W.3d 777 (Tex. 2005) ........................................................ 11, 15, 26

*Moki Mac River Expeditions v. Drugg,*
    221 S.W.3d 569 (Tex. 2007) ........................................................ 22, 23, 30

*Moncrief Oil Int'l, Inc. v. OAO Gazprom,*
    414 S.W.3d 142 (Tex. 2013) ............................................................ 10, 29

*Moore v. Lake States Dairy Ctr., Inc.,*
    2014 IL App (1st) 140149-U (Ill. App. Sept. 30, 2014)..................................16

*Morris v. Kohls-York,*
    164 S.W.3d 686 (Tex. App.—Austin 2005, pet. dism'd)................................7

*Nat'l Indus. Sand Ass'n v. Gibson,*
    897 S.W.2d 769 (Tex. 1995) ......................................................................22

*Perna v. Hogan,*
    162 S.W.3d 648 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ..............7, 8

*PHC-Minden, L.P. v. Kimberly-Clark Corp.,*
    235 S.W.3d 163 (Tex. 2007) ..................................................................9, 15

*Rapaglia v. Lugo,*
    372 S.W.3d 286 (Tex. App.—Dallas 2012, no pet.) ......................................21

*Schlobohm v. Schapiro,*
    784 S.W.2d 355 (Tex. 1990) ......................................................................22

*Shaffer v. Heitner,*
    433 U.S. 186 (1977)...................................................................................18

*Shell Compania Argentina De Petroleo, S.A. v. Reef Exploration, Inc.,*
    84 S.W.3d 830 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).............22

*Siskind v. Villa Found. for Educ., Inc.,*
    642 S.W.2d 434 (Tex. 1982) ........................................................................8

*Stull v. LaPlant,*
    411 S.W.3d 129 (Tex. App.—Dallas 2013, no pet.) ............................... 12, 19

*Wellness Wireless, Inc. v. Vita,*
    No. 01-12-00500-CV, 2013 WL 978270 (Tex. App.—Houston [1st
    Dist.] Mar. 12, 2013, no pet.) ....................................................................12

## Constitutions, Statutes, and Rules

28 U.S.C. § 1782 ................................................................17

Ill. R. Sup. Ct. 23(e) .........................................................16

Texas Rules of Civil Procedure,
    Rule 120a(3) ............................................... 26, 28, 30

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not believe that oral argument would aid the Court's decisional process. This case does not involve complex facts or issues of first impression. The facts are clear from the record, and to the extent there is any ambiguity, the issues can be decided as a matter of law even assuming Appellant's jurisdictional allegations are true. However, in the event that this Court grants Appellant's request for oral argument, Appellees request that they also be given an equal opportunity to present oral argument to the Court.

## STATEMENT OF THE CASE

*Nature of the case:* This case arises out of the divorce of Appellant Leticia Loya ("Loya") and Miguel Loya. It has two parts: legal malpractice claims against Loya's attorneys in the divorce, and fraud and breach of fiduciary duty claims against Miguel Loya and eight defendants associated with Mr. Loya's employer, Vitol Inc. (including the five Appellees). SCR 3-25.

*Course of proceedings:* Loya filed this case in June 2012 against her former attorneys. CR 7. In June 2014, she filed an amended petition to add the claims against the Vitol-related defendants. CR 16. The Appellees are all foreign individuals and entities not subject to personal jurisdiction in Texas; accordingly, each Appellee specially appeared. CR 51, 64, 77, 90, 103. Appellant responded to the special appearances and also filed motions for continuance of the special appearance hearings. CR 239, 296, 356, 424, 652. The trial court heard the Appellees' special appearances and Appellant's motions for continuance on November 10, 2014. RR 5.

*Trial court disposition:* The trial court denied Appellant's motions for continuance and granted Appellees' special appearances. CR 1268-72, 1280.

# ISSUES PRESENTED

1.      Did the trial court err in granting Appellees' special appearances, where Appellees are all foreign entities or individuals and Appellant did not plead or prove that any Appellee made a misrepresentation or omission while in Texas or even in a communication to a person in Texas?

2.      Did the trial court err in denying Appellant's motions for continuance, where Appellant failed to request any jurisdictional discovery for several months after Appellees filed special appearances, Appellant deposed each Appellee on jurisdictional issues, and Appellant failed to demonstrate that the documents requested were necessary to her opposition to the special appearances?

## STATEMENT OF THE FACTS

In 2008, Appellant Leticia Loya ("Loya") filed for divorce from her husband, Miguel Loya. SCR 7. Loya contends that Miguel Loya was employed by Vitol Inc., and that the Loyas were shareholders in appellee Vitol Holding II, S.A. ("VHIISA"). SCR 8. In 2006, the Loyas exchanged their shares in VHIISA for shares in Appellee Tinsel Group, S.A.; Loya alleges that the value of the Tinsel shares reflects the performance of "a given underlying combination of shares in VHIISA." SCR 8-9. The value of these shares was at issue in the divorce, which was made final in 2010. SCR 11. In this lawsuit, which also includes claims against her lawyers in the divorce proceeding, Loya contends that Appellees VHIISA, Tinsel, Stichting Tinsel, Jacobus Sterken, and Ian Taylor (collectively, the "Vitol Defendants") had information about a future investment that Vitol Inc.[1] intended to make in Africa but did not disclose this information to her, even though it allegedly would have had a material impact on the value of the Tinsel shares. SCR 9-11.

Loya admits that none of the Vitol Defendants are citizens or residents of Texas. SCR 4-6. With one exception, it is undisputed that none of the Vitol Defendants participated in discovery in the Loyas' divorce or had any communications with Loya or her attorneys or expert witnesses at any time, but

---

[1]    Loya's amended petition states that "Vitol" made this investment, and it defines "Vitol" as "Vitol Inc." SCR 6. Vitol Inc. was a defendant in the case but did not specially appear.

1

Loya nonetheless alleges that they had an affirmative duty to disclose the future plans of one Vitol-related entity to her during the divorce proceedings because of her community property interest in the Tinsel shares. CR 132, 158, 172, 209, 234.

Appellee Ian Taylor ("Taylor") resides in London, England; he is not a citizen or resident of Texas. CR 152, 158. He is employed by a British company called Vitol Services, Limited. CR 1007. The Vitol group of companies (referred to as the "Vitol Group," although this is not a business entity) includes a company headquartered in Houston, Vitol Inc., but Taylor is not an employee, officer, or director of this entity. CR 152, 158. The only connection between Taylor and Loya's claims is that Taylor was deposed in London, not in Texas, as part of the Loyas' divorce proceedings. CR 158.

Appellee Stichting Tinsel is a Dutch foundation with its principal place of business in Rotterdam, the Netherlands; it is not a resident or citizen of Texas. CR 171. Stichting Tinsel has no connection to the Loyas' divorce proceedings. CR 172. Appellee Tinsel Group, S.A. ("Tinsel") is a Luxembourg company with its principal place of business in Luxembourg City; it is not a resident or citizen of Texas. CR 131. Tinsel had no involvement in the Loyas' divorce proceedings. CR 132. Stichting Tinsel and Tinsel did enter into shareholders' agreements with the Loyas and other Texas residents. There is no allegation that this shareholders' agreement was performed, or intended to be performed, in whole or in part in

Texas; rather, it governs the relationship between the shareholders—wherever they may be located—and these Netherlands and Luxembourg entities. CR134-44. Further, the shareholders' agreement specifies that it is governed by the laws of the Netherlands and that the courts of Rotterdam, the Netherlands, have exclusive jurisdiction over any disputes arising under the agreement. CR 140.

Appellee VHIISA is a Luxembourg company with its principal place of business in Luxembourg City, Luxembourg; it is not a resident or citizen of Texas. CR 209. It was not involved in the Loyas' divorce proceedings. CR 209. Like Tinsel, VHIISA entered into a shareholders' agreement with each of its shareholders, including Texas shareholders, to govern the relationship between the shareholders and VHIISA. CR 212-223. This shareholders' agreement also specifies that it is governed by the laws of the Netherlands and that the courts of Rotterdam, the Netherlands, have exclusive jurisdiction over any disputes arising under the agreement. CR 219.

Appellee Jacobus Sterken ("Sterken") is a citizen of the Netherlands who resides in Switzerland; he is not a citizen or resident of Texas. CR 234. He did not participate in the Loyas' divorce proceedings. CR 234.

## SUMMARY OF THE ARGUMENT

Loya failed to plead sufficient jurisdictional facts against Sterken and Taylor, and Sterken and Taylor therefore met their burden to negate all

3

jurisdictional facts by proving that neither of them is a resident of Texas. The trial court's rulings as to Sterken and Taylor can be upheld on that basis alone.

To the extent the trial court, or this Court, considers the unpled facts alleged by Loya in her opposition to the special appearances, Loya has failed to show that these facts support general or specific jurisdiction as to any Appellee. None of the Appellees is at home in Texas; at most, they have occasional or sporadic contacts with Texas, such as occasional telephone calls from their foreign residences with a person in Texas. These limited contacts do not establish general jurisdiction.

Loya has not explained to the trial court or to this Court which alleged contacts with Texas support specific jurisdiction, but the only alleged contacts with a remote tie to this case are not substantially connected to the operative facts of this case, which is the relevant inquiry. She has alleged that Appellee, Ian Taylor, gave a deposition in the underlying divorce case, but she has not alleged any misrepresentations or omissions that occurred in that deposition, and, moreover, that deposition took place in London pursuant to an order from a London court. She has also alleged that Appellees signed contracts with Texas residents, but these contracts, while generally related to the subject matter of this case, are not substantially connected to the operative facts. This is not a breach of contract case, and the specific terms of the contracts are not at issue. In addition, the contracts all contain forum selection and choice of law clauses mandating jurisdiction in the

4

courts of Rotterdam, the Netherlands, and application of Dutch law, indicating that the parties specifically intended to avoid availing themselves of the protections of Texas law. The trial court did not err in granting Appellees' special appearances.

Further, the trial court did not err in denying Appellant's motions for continuance. Appellant filed these motions a few days before the special appearance hearing, which was postponed for over a month at Appellant's request. Appellant waited about three months after Appellees filed their original special appearances to conduct any discovery, and Appellees made themselves available on short notice for depositions. Appellant argues that the trial court should have granted a continuance to allow Appellant to obtain responses to requests for production, but Appellant failed to explain to the trial court or to this Court how those requests are relevant to the special appearances and why the depositions were insufficient. Appellant did not meet her burden on the motions for continuance, and the trial court properly denied those motions.

## STANDARD OF REVIEW

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that is reviewed *de novo*. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The trial court often must resolve questions of fact before deciding the jurisdictional question. *Id*. Where the trial court fails to issue findings of fact and conclusions of law, all facts necessary to

support the judgment and supported by the evidence are implied. *See Bryan v. Gordon*, 384 S.W.3d 908, 913 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

A trial court's denial of a motion for continuance in a special appearance proceeding is reviewed under an abuse of discretion standard. *BMC Software*, 83 S.W.3d at 800. A trial court abuses its discretion when it acts in a manner so "arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id*. (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)).

## **ARGUMENT**

**I.    Loya Has Not Pled That Taylor or Sterken Committed an Act in Texas, and They Therefore Defeated Jurisdiction by Proof of Non-Residence.**

**A.    Under Texas law, the plaintiff has the initial burden to plead jurisdictional facts as to each defendant.**

Texas courts do not have jurisdiction over a nonresident defendant unless the nonresident defendant has purposefully established "minimum contacts" with Texas and the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985); *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Under the minimum contacts analysis, Texas courts must determine whether the nonresident defendant has purposefully availed himself of conducting activities within the State of Texas. *CSR Ltd. v. Link*, 925

6

S.W.2d 591, 596 (Tex. 1996); *Guardian Royal*, 815 S.W.2d at 226. Minimum contacts are not established unless the court finds it has either specific or general jurisdiction over the defendant. *Guardian Royal*, 815 S.W.2d at 227.

The plaintiff has the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. "If the plaintiff does not plead jurisdictional allegations, *i.e.*, that the defendant has committed any act in Texas, the defendant can satisfy [his] burden of negating all bases of personal jurisdiction by presenting evidence that [he] is a nonresident at the special appearance hearing." *Perna v. Hogan*, 162 S.W.3d 648, 652–53 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *accord Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658–59 (Tex. 2010). The plaintiff must specify, and a court must examine, <u>each individual defendant's contacts</u> with the forum state; the defendants' contacts cannot be aggregated. *See Morris v. Kohls-York*, 164 S.W.3d 686, 693 (Tex. App.—Austin 2005, pet. dism'd) (stating that, when a case involves multiple defendants, "each defendant's actions and contacts with the forum [must be tested] separately.").

### B. Loya did not plead sufficient jurisdictional facts as to Sterken and Taylor, and Sterken and Taylor proved non-residence in Texas.

As to Sterken and Taylor, Loya only pled that they each "actively participated in Texas businesses," without pleading that this "participation" occurred while Sterken and Taylor were in Texas. SCR 5. Sterken and Taylor

7

each submitted declarations stating that they are not citizens or residents of Texas, a fact that is undisputed. CR 152, 158, 234.

Because Loya failed to plead that Sterken or Taylor committed an act in Texas, Sterken and Taylor defeated Loya's allegation of jurisdiction by submitting proof that they are not citizens or residents of Texas, and the trial court's orders as to Sterken and Taylor can be upheld on that basis alone. *Perna*, 162 S.W.3d at 652–53.

## II. A Texas Court Does Not Have General Jurisdiction Over the Vitol Defendants. [2]

### A. A defendant must be "at home" in the forum for general jurisdiction to exist.

General jurisdiction cannot be exercised unless the nonresident defendant has continuous and systematic contacts with the State of Texas. *Guardian Royal*, 815 S.W.2d at 230; *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982); *see also Helicopteros*, 466 U.S. 408, 416 (1984). Indeed, "those who live or operate primarily outside a state have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach., Ltd. v. Nicastro*,

---

[2] Loya has combined her arguments as to each Vitol Defendant on general and specific jurisdiction. Because the standards are different, the Vitol Defendants have separately addressed general and specific jurisdiction. Loya has not made clear which facts she believes support general jurisdiction and which support specific jurisdiction. The Vitol Defendants have assumed that, unless Loya has alleged or argued at least some connection to this case, the facts alleged relate to her argument on general jurisdiction. None of the facts discussed in the Vitol Defendants' argument on general jurisdiction bear any relationship whatsoever to the operative facts of Loya's claims, except as separately discussed in the section on specific jurisdiction.

131 S. Ct. 2780, 2787 (2011). Thus, general jurisdiction should only be asserted over defendants whose contacts with a forum state "render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). As the United States Supreme Court recently explained, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 131 S. Ct. at 2853–54; *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("*Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there.").

Even under the pre-*Daimler* standard, the contacts alleged by Loya would not establish general jurisdiction. In *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168-69 (Tex. 2007) (internal citations omitted), the Texas Supreme Court explained that courts can evaluate general jurisdiction by "construct[ing] a hypothetical claim without any forum connection 'to insure that any related forum activities of the defendant are not improperly infiltrating the dispute-blind inquiry.'"[3] In this case, for example, the Court might consider whether it would exercise jurisdiction over each of the Vitol Defendants if each of them were defending a case in Texas brought by a New York resident regarding a

---

[3] In that case, the Court held that Texas courts did not have general jurisdiction over a Louisiana corporation, despite that corporation's trips to Texas, payments to Texas vendors, and contracts with Texas companies. *PHC-Minden*, 235 S.W.3d at 171.

9

breach of a contract unconnected with Texas. Would Texas have jurisdiction over Stichting Tinsel, a Dutch company defending a suit by a New York resident, in that case? Or jurisdiction over Ian Taylor, a UK citizen who lives in London? If the answer is no, then Texas does not have general jurisdiction over the Vitol Defendants in this case either.

Loya cites *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 1091044, at \*4 (N.D. Cal. Mar. 13, 2014) for the proposition that, where "the target and end result of the activity was in the forum state," the defendant is subject to general jurisdiction. But evaluation of contacts specific to the case at hand is a specific jurisdiction analysis, and in fact, that case is about specific jurisdiction. The court there stated, "Plaintiffs do not argue that the Court has general jurisdiction over Defendant." *Id.* To the extent Loya is arguing that Texas courts have jurisdiction over the Vitol Defendants because of some activities elsewhere that were allegedly directed at a Texas resident, the Texas Supreme Court has repeatedly rejected the idea that, because the plaintiff feels the injury in Texas, jurisdiction exists. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 157 (Tex. 2013) (refusing to find jurisdiction even though defendants knew plaintiff would feel the effects in Texas); *Knight v. Knight*, 367 S.W.3d 715, 727 (Tex. 2012) (refusing to find specific jurisdiction where plaintiff, the alleged victim of an intentional tort specifically directed at her, was in Texas, but the

10

alleged wrongful acts all occurred outside of Texas); *Michiana Easy Livin'*
*Country, Inc. v. Holten*, 168 S.W.3d 777, 778-92 (Tex. 2005) (explicitly rejecting
the "directed a tort" test).

### B. Ian Taylor is not subject to general jurisdiction in Texas.

In support of her argument regarding Ian Taylor, Loya first recites facts
regarding the "Vitol Group," which is not actually a business entity and which is
not a party to this case. App't Br. 3-4. Loya then points out that Taylor has been
to Texas 11 times in ten years (on unspecified business); that he receives
communications from the Houston office of the "Vitol Group" about unspecified
matters; that he signed certain agreements with and sent letters to Mr. Loya—not
Appellant Ms. Loya—on behalf of various Vitol entities; that he was the manager
of a Texas limited liability company and carried out business for that company;
and that he discussed investments in Houston real estate with Mr. Loya in 2008.
App't Br. 4-7. Finally, Loya cites to a 2009 Fourteenth Court of Appeals opinion
allegedly affirming a trial court opinion finding that Taylor was subject to
jurisdiction in Harris County. App't Br. 7. None of these facts establish general
jurisdiction.

> 1. Taylor's contacts with Texas as an officer, employee, or agent
> of a company cannot be attributed to him individually.

Under the fiduciary-shield doctrine, a court cannot exercise jurisdiction over
a nonresident corporate officer if his only contacts with Texas are those the officer

encounters by virtue of his role as an officer on behalf of the corporation. *See Wellness Wireless, Inc. v. Vita*, No. 01-12-00500-CV, 2013 WL 978270, at *9 (Tex. App.—Houston [1st Dist.] Mar. 12, 2013, no pet.) (unpublished) ("Texas courts have adopted the fiduciary-shield doctrine to protect a corporate officer or employee from the trial court's exercise of general personal jurisdiction when all of the individual's contacts with Texas were on behalf of his employer.") (internal quotations omitted). When a corporate officer, employee, or agent signs a contract with a Texas resident on behalf of the corporation, that individual officer, employee, or agent has not, in his or her individual capacity, created a jurisdictional contact with Texas.[4] *Stull v. LaPlant*, 411 S.W.3d 129, 137-38 (Tex. App.—Dallas 2013, no pet.).

Other contacts not attributable to Taylor individually include: (1) the alleged importance of the Houston office to the "Vitol Group," Taylor's alleged employer; (2) communications from Houston that Taylor receives in his capacity as an employee of the "Vitol Group"; and (3) contracts he signed on behalf of VHIISA and other entities. Likewise, Taylor's activities as manager of a Texas LLC, on behalf of that company, are not attributable to him individually. Jurisdiction over Taylor must be determined based on Taylor's own contacts, not contacts on behalf of a company that employs him or for which he acts as an agent.

---

[4] There is no allegation or evidence that any of these alleged contacts with Texas on behalf of an entity involved tortious acts by Taylor or were connected with this case in any way.

2. The other alleged contacts with Texas do not establish general jurisdiction over Taylor.

Loya simply misstates the issue and the holding in the 2009 appeal. In that case, the Fourteenth Court of Appeals considered whether Loya's deposition would constitute an impermissible apex deposition. CR 841; *In re Taylor*, 401 S.W.3d 69 (Tex. App.—Houston [14th Dist.] 2009) (orig. proceeding). The deposition was ordered by a London court through letters of request from the Texas court, which were ruled on by High Court of Justice, Queen's Bench Division, in London. CR 841, 847. Loya's divorce attorneys were well aware that a Texas court did not have jurisdiction over Taylor and that a request for his deposition would have to proceed using letters of request issued to the London court, and, accordingly, the Fourteenth Court of Appeals did not consider whether a Texas court had jurisdiction over Taylor. Likewise, Loya mischaracterizes the trial court's May 19, 2009 order. That court did not deny Taylor's special appearance; rather, Taylor specially appeared to file a motion to quash, and the court denied the motion to quash. CR 991-94. The order did not address the merits of the special appearance. *Id*.

That leaves the Court with Taylor's 11 visits to Texas in ten years. Under the standard articulated in *Daimler* and *Goodyear*, approximately one visit per year to the forum does not make an individual "at home" there. *Daimler,* 134 S. Ct. at

13

760; *Goodyear*, 131 S. Ct. at 2853–54. The trial court properly granted Taylor's special appearance as to general jurisdiction.

### C. Tinsel Group, S.A. is not subject to the general jurisdiction of Texas courts.

Loya cites the following facts in support of her claim of general jurisdiction over Tinsel: (1) Tinsel has two Texas-based directors, (2) Tinsel occasionally mails documents to those Texas directors, (3) the Texas directors participate in calls and emails with the other Tinsel directors, (4) Tinsel entered into four related contracts with Texas residents, and (5) Tinsel sought remedies from a Houston federal district court in connection with a foreign discovery proceeding. App't Br. 8-9.[5]

#### 1. Having and communicating with Texas-based directors does not subject a company to general jurisdiction in Texas.

Loya cites no case law supporting her theory that a foreign corporation purposefully avails itself of the benefits of Texas law by electing Texas residents to its board of directors. At most, this demonstrates that the Texas residents have chosen to subject themselves to <u>foreign</u> law as it relates to their obligations as

---

[5] Loya's Second Amended Petition includes an allegation that Tinsel conducted meetings in Texas. SCR 4. She does not reference these alleged meetings in her briefing, and there is no proof that these meetings occurred; there is also no allegation that these meetings related to this lawsuit in any way. Karl Pardaens, a Tinsel board member, testified that telephonic board meetings are organized from Luxembourg, not Texas; that no board meetings have ever taken place in the United States; and that the important board meetings take place physically in Luxembourg. CR 1132-84, 1188, 1222-24. To the extent a factual finding on this point is necessary to support the trial court's judgment, a finding that no meetings occurred in Texas must be implied. *See Bryan*, 384 S.W.3d at 913.

14

directors. Likewise, communications with these Texas residents, from the foreign company, discussing the business of the foreign company as governed by foreign law, does not evidence any purposeful availment of the benefits of Texas law. Moreover, even if these acts counted as jurisdictional contacts with Texas, they are neither pervasive nor continuous enough to establish general jurisdiction over Tinsel under the standards articulated in *Daimler* and *PHC-Minden*. *Daimler,* 134 S. Ct. at 760; *PHC-Minden,* 235 S.W.3d at 168-69.

> 2. Entering into contracts with Texas residents does not establish general jurisdiction.

Loya contends that, if a company enters into multiple contracts with Texas residents, that is sufficient to establish general jurisdiction over that company. That is contrary to Texas law. In *Denso Corp. v. Hall*, 396 S.W.3d 681, 693-95 (Tex. App.—Houston [14th Dist.] 2013, no pet.), the Fourteenth Court of Appeals found that no general jurisdiction existed over a foreign defendant whose employees had been to Texas 155 times in ten years for a variety of meetings, including meetings to negotiate multiple contracts with Texas residents. Further, as explained above, these contracts contain forum selection clauses mandating exclusive jurisdiction in the courts of Rotterdam, the Netherlands, and choice-of-law provisions mandating application of Dutch law. The Texas Supreme Court has held that "insertion of a clause designating a foreign forum suggests that no local availment was intended" by a contract. *Michiana*, 168 S.W.3d at 792; *see also J.A.*

15

*Riggs Tractor Co. v. Bentley*, 209 S.W.3d 322, 332 (Tex. App.—Texarkana 2006, no pet.) ("[W]e note that the forum selection clause in the credit agreement suggests that Riggs anticipated suit in Arkansas and further suggests that Riggs was not availing itself of the benefit of Texas' laws.").

The *Moore v. Lake States Dairy Ctr., Inc.*, 2014 IL App (1st) 140149-U (Ill. App. Sept. 30, 2014), case cited by Loya on this issue is not even binding precedent in Illinois. According to Illinois Supreme Court Rule 23, it can only be cited for the purposes of double jeopardy, res judicata, collateral estoppel, or law of the case. Ill. R. Sup. Ct. 23(e). Moreover, the contracts at issue here are vastly different from the contracts in *Moore*. They are not contracts for the sale of goods or services in Texas or with Texas residents; they are shareholder agreements between all shareholders—whether residents of Texas or not—and foreign companies, all containing provisions specifying application of Dutch law and mandatory venue in the Netherlands. If having Texas shareholders established general jurisdiction, that would negate the Supreme Court's admonition in *Daimler* that general jurisdiction tests should not lead to defendants being subject to general jurisdiction in many states. *Daimler*, 134 S. Ct. at 761-62. Under such a test, public companies in particular would be subject to general jurisdiction in most states, and they would not be able to structure their activities to control where they would be liable to suit. *Id*.

16

3.  The relief Tinsel sought from a Houston federal court does not establish general jurisdiction.

The relief Tinsel sought from the Houston federal court was in a proceeding specifically designed for foreign entities, like Tinsel, to obtain discovery from United States residents for use in a foreign proceeding. CR 1216. This procedure is found in federal law, 28 U.S.C. § 1782. CR 1216. Deriving a benefit from federal law—not Texas law—does not constitute purposeful availment of the Texas forum. *Favour Leading, LLC v. Mulligan*, No. 05-13-01000-CV, 2014 WL 4090130, at *8 (Tex. App.—Dallas Aug. 19, 2014, no pet.) (mem. op.).

**D.  Jacobus Sterken is not subject to the general jurisdiction of Texas courts.**

Loya cites the following facts with respect to Sterken: (1) he was formerly a director of two Texas entities; (2) he has traveled to Houston 12-13 times since 1999 and receives about a dozen phone calls or emails a year from the Vitol, Inc. Houston office; (3) on behalf of Stichting Tinsel and Tinsel, he signed two contracts with Miguel Loya, a Texas resident; and (4) he sent Vitol-related business communications to Miguel Loya in Texas. App't Br. 10-11.

1.  Sterken's former directorships of two Texas companies do not subject him to general jurisdiction in Texas.

Here, apparently in support of her claim of general jurisdiction, Loya alleges that Sterken was formerly a director of two Texas companies. There is no allegation that Sterken committed any act related to this lawsuit in his capacity as

17

director of either company. The United States Supreme Court has held that accepting a director position with a company incorporated in a particular state does not, by itself, form a basis for personal jurisdiction over that director in the state of incorporation. *Shaffer v. Heitner*, 433 U.S. 186, 214-216 (1977).

2. Sterken's occasional trips to and communications with Texas do not subject him to general jurisdiction in Texas.

Even assuming that Sterken's approximately annual trips to Texas and dozen or so emails and phone calls per year with Texas residents were done in his individual capacity, rather than in his capacity as an employee of a Vitol or other entity, these contacts do not establish general jurisdiction. Sterken is a Dutch citizen who resides in Switzerland, so the "paradigm forum" in which he is "at home" is Switzerland, not Texas. *Goodyear*, 131 S. Ct. at 2853–54. If occasional visits and phone calls rendered him "at home" in a state, he might be "at home" in many states, contrary to the holding in *Goodyear*. These contacts are neither continuous nor systematic, and they do not establish general jurisdiction.

3. The contracts Sterken signed and communications he sent on behalf of Vitol entities are not Texas contacts attributable to Sterken.

Loya alleges that Sterken signed certain contracts as a representative of Stichting Tinsel and Tinsel, not in his individual capacity, and sent letters on behalf of Tinsel and VHIISA. App't Br. 10; CR 264-273; CR 276-279. Because Sterken undertook these actions as an employee or agent of these entities, and not on his

18

own behalf, these contacts are not attributable to him individually. *See Stull*, 411 S.W.3d at 137-38.

**E. Stichting Tinsel is not subject to the general jurisdiction of Texas courts.**

Loya cites two facts in support of her argument for jurisdiction over Stichting Tinsel: (1) a Stichting Tinsel director traveled to Texas a number of times on business, not necessarily for Stichting Tinsel, and (2) Stichting Tinsel has entered into contracts with Texas residents.[6] App't Br. 12-13.

First, there is no allegation or proof that the trips by the Stichting Tinsel director related to any business for Stichting Tinsel, so these trips cannot possibly create a jurisdictional contact between Stichting Tinsel and Texas. Second, as discussed above with respect to Tinsel, entering into contracts with Texas residents does not establish general jurisdiction. To the extent that Loya claims Texas has jurisdiction over Stichting Tinsel because Stichting Tinsel holds shares of Tinsel in trust for the individual shareholders, including Texas residents, the presence of a trust beneficiary in Texas does not establish jurisdiction. *See Dowdy v. Miller*, 122 S.W.3d 816, 823 (Tex. App.—Amarillo 2003, no pet.).

---

[6] Loya's Second Amended Petition includes an allegation that Stichting Tinsel conducted meetings in Texas. SCR 6. She does not reference these alleged meetings in her briefing, and there is no proof that these meetings occurred; there is also no allegation that these meetings related to this lawsuit in any way. Sam Lambroza, a Stichting Tinsel board member, testified that Stichting Tinsel has never had any Texas-based directors, and there is no evidence of Stichting Tinsel's attendance at any other type of meeting in Texas. CR 1071-72. Rather, the evidence is that Stichting Tinsel's business has taken place entirely in the Netherlands, and it has never engaged in business in Texas. CR 171.

19

**F.      VHIISA is not subject to the general jurisdiction of Texas courts.**

With respect to VHIISA, Loya again cites (1) the same contracts with Miguel Loya, a Texas resident, along with annual communications to Texas shareholders; (2) a trip by a VHIISA director to Texas for Vitol-related business, not necessarily on behalf of VHIISA specifically; (3) that Miguel Loya, a Texas resident, was formerly a director of VHIISA; and (4) that VHIISA allegedly has a subsidiary in Houston (presumably she refers to Vitol Inc.).[7]  App't Br. 14-15, 36. As explained above, contracts and occasional communications with Texas residents and the presence of a Texas resident on the board of directors are not facts that create general jurisdiction.  Likewise, one trip to Texas by a VHIISA director, for business that may or may not have been on behalf of VHIISA, does not demonstrate continuous and systematic contacts between VHIISA and Texas.

Neither does an office or subsidiary in Texas.  Loya has neither pled nor proved that Vitol Inc. (which is a Houston-based company) is a subsidiary or agent of VHIISA (or any of the other Vitol Defendants).  But even if VHIISA had an office or a subsidiary in Texas, that would not establish general jurisdiction.  Judge Rosenthal recently rejected the arguments that an office in Texas or a co-defendant

---

[7]      Loya's Second Amended Petition includes an allegation that VHIISA conducted meetings in Texas.  SCR 4.  She does not reference these alleged meetings in her briefing, and there is no proof that these meetings occurred; there is also no allegation that these meetings related to this lawsuit in any way.  There is no evidence that any meetings occurred in Texas. Jonathan Marsh, a VHIISA board member, testified that it is a passive holding company that does not do active business.  CR 1150.  The undisputed evidence is that VHIISA has no employees or offices in Texas and had never done any business in Texas.  CR 209.

subsidiary in Texas could establish general jurisdiction over a foreign defendant.[8]

She found that, based on the standard articulated in *Daimler*, a defendant was not

subject to personal jurisdiction, despite having an office in Texas and a subsidiary

in Texas who was a defendant in the same lawsuit. *Air Tropiques, Sprl v. N. & W.

Ins. Co.*, No. CIV.A. H-13-1438, 2014 WL 1323046, at *11 (S.D. Tex. Mar. 31,

2014). Texas courts have also long rejected the idea that personal jurisdiction over

a co-defendant establishes, or has any impact on, the issue of personal jurisdiction

over another defendant. *See Rapaglia v. Lugo*, 372 S.W.3d 286, 290 (Tex. App.—

Dallas 2012, no pet.); *GlobeRanger Corp. v. Software AG*, 2013 WL 1499357, at

*3 (N.D. Tex. Apr. 12, 2013) (mem. op.) ("[E]ven with allegations of a conspiracy,

the Court must evaluate each of the Defendants' contacts separately to determine

whether personal jurisdiction exists.").

### III.   A Texas Court Does Not Have Specific Jurisdiction Over the Vitol Defendants for Loya's Claims.

#### A.   Specific Jurisdiction

Specific jurisdiction can be exercised only if a nonresident defendant's

activities were "purposefully directed" to Texas <u>and</u> the litigation resulted from

alleged injuries that "arise out of" or "relate to" those activities. *Nat'l Indus. Sand*

---

[8]   In *Barriere v. Juluca*, No. 12-23510-CIV, 2014 WL 652831, at *5 (S.D. Fla. Feb. 19, 2014), the case cited by Loya, the court accepted all the plaintiff's jurisdictional allegations as true because the defendant did not submit any affidavits or other contrary evidence. Other courts have limited *Barriere* to its unusual facts and generally disapproved of its holding. *See Aronson v. Celebrity Cruises, Inc.*, Case No. 12–CV–20129, 2014 WL 3408582, at *7 n.5 (S.D. Fla. May 9, 2014).

*Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex. 1995); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 358 (Tex. 1990); *see Helicopertos*, 466 U.S. at 414; *Guardian Royal*, 815 S.W.2d at 227. The Texas Supreme Court recently explained that "for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a *substantial connection* between those contacts and the operative facts of the litigation." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007) (emphasis added); *Shell Compania Argentina De Petroleo, S.A. v. Reef Exploration, Inc.*, 84 S.W.3d 830, 837 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("Specific jurisdiction is established if the defendant's alleged liability arises from, or is related to, an activity conducted within the forum."). The *Moki Mac* court emphasized that "purposeful availment alone will not support an exercise of specific jurisdiction" and that for specific jurisdiction, "purposeful availment has no jurisdictional relevance unless the defendant's liability arises from or relates to the forum contacts." 221 S.W.3d. at 579 (emphasis added).

The Vitol Defendants are not subject to specific jurisdiction in this case. A specific jurisdiction contact must demonstrate that the defendant both "purposefully availed" itself of the benefits and protections of Texas law, and that it did so in a way "substantially connected to the operative facts" of this case.

22

*Moki Mac*, 221 S.W.3d at 576, 584-85. There are no such facts in this case for the specially appearing Vitol Defendants.

In fact, Loya has not even sufficiently pled specific jurisdiction. Rather, she merely alleged that, as to VHIISA, Tinsel, and Stichting Tinsel, these entities engaged in unspecified "activities purposefully directed to Texas that caused injury arising to and relating to those activities that form the basis of the lawsuit." CR 4-6. This is not the standard for specific jurisdiction. Loya is well aware that she cannot allege any act by any Vitol Defendant in Texas substantially connected to the operative facts of her claims, because none exist, so she has attempted to gloss over the legal standard by alleging that these entities engaged in some activities in unspecified locations that caused unspecified injuries to unspecified people that relate in some way to other "activities that form the basis of this lawsuit." SCR 4. This vague pleading of some attenuated connection to the facts of this case does not sufficiently allege specific jurisdiction. As to Sterken and Taylor, she has not even attempted to allege specific jurisdiction. SCR 5. Nonetheless, in her briefing, Loya has raised two facts that appear to constitute her basis for her argument on specific jurisdiction: (1) Taylor's deposition testimony in London in the divorce proceedings and (2) the shareholder agreements and related contracts signed by Miguel Loya relating to the VHIISA and Tinsel shares held by the Loyas as

community property. Neither of these establishes specific jurisdiction over any Vitol Defendant.

Loya <u>has not alleged</u> that any Vitol Defendant made any misrepresentation to her, or omitted to tell her any facts, while present in Texas, or even in any telephone call, letter, or email to Texas. Nor has Loya alleged that the investments that are the subject of her lawsuit were ever discussed or dealt with in any way by any of the Vitol Defendants while in Texas. These are the types of facts that would show a substantial connection between the Vitol Defendants' contacts with Texas and the operative facts of this case, but they do not exist.

## B. Taylor's London deposition is not a Texas contact.

The only fact cited by Loya that connects Taylor to this case is Taylor's appearance <u>in London</u> at a deposition in the underlying divorce. Taylor's appearance at a deposition in London, as ordered by a London court, cannot constitute a contact with Texas. Even if Taylor made a misrepresentation or an omission during that deposition in London—which Taylor denies and Loya has not even alleged—that would not constitute a purposeful contact with Texas. Where allegedly fraudulent conduct occurs outside of Texas, there is no purposeful availment of the benefits of doing business in Texas, even if the tort relates to property in Texas. *Curocum Energy LLC v. Young-Sub Shim*, 416 S.W.3d 893,

24

978-98 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Loya cannot cite a single act by Taylor in Texas that is substantially connected to her claims in this case.

## C. The shareholder agreements are not substantially connected to the operative facts of the case.

The Texas Supreme Court has explained that, in a fraud case, the operative facts are the actual misrepresentations or communications in which facts were omitted, not other events that just bear some relationship to the case. *BMC Software*, 83 S.W.3d at 786-87. Here, the shareholder agreements do require Loya to litigate her claims against the Vitol Defendants in the Netherlands because Loya's allegations of duty are based on her alleged status as a shareholder of VHIISA, Tinsel, and/or Stichting Tinsel, and the broad language of the forum selection clause in the shareholder agreements encompasses all disputes "arising out of or in connection with" the agreements. CR 180, 219.

But a jurisdictional contact must be "substantially connected to the operative facts" of the case, not merely "in connection with" some aspect of the case. *BMC Software*, 83 S.W.3d at 786-87. The shareholder agreements are not substantially connected to the operative facts of the case; there is no claim that Mr. Loya was fraudulently induced to sign the agreements, for example.

Loya's only argument for a substantial connection between these contracts and the operative facts of the case is that, because the Vitol Defendants cited them in their motions to dismiss based on a mandatory forum selection clause, they must

25

be substantially connected. But the Texas Supreme Court has rejected that theory. In *Michiana*, the Texas Supreme Court found that (1) the trial court should have enforced the forum selection clause in the contract between the Texas resident and the foreign defendant and (2) Texas courts did not have specific jurisdiction over the forum defendant. 168 S.W.3d at 793. In fact, Texas courts have treated forum selection and choice of law provisions selecting foreign forums and foreign law as evidence that the parties specifically intended to *avoid* availing themselves of the benefits of Texas law. *Id.* at 792; *see also J.A. Riggs Tractor Co.*, 209 S.W.3d at 332. Under Loya's theory, a foreign defendant who had a contract with a Texas resident that specified a mandatory foreign forum could never enforce that forum selection clause without subjecting itself to personal jurisdiction in Texas. This is absolutely contrary to the Texas Supreme Court's holding in *Michiana*. 168 S.W.3d at 793. The trial court properly granted Appellees' special appearances.

## IV. The Trial Court Did Not Err in Denying Loya's Motion for Continuance.

### A. A plaintiff seeking a continuance of a special appearance hearing must demonstrate that the discovery is "essential" to the plaintiff's opposition.

Rule 120a(3) of the Texas Rules of Civil Procedure provides that a trial court may order a continuance to permit discovery to be had or depositions to be taken, or make any other order as is just, where it appears from the affidavits of a party opposing a special appearance that he <u>cannot</u>, <u>for reasons stated in the</u>

26

affidavit, present facts <u>essential to justify his opposition</u> to the special appearance. TEX. R. CIV. P. 120a(3) (emphasis added).

## B. Loya had ample time to conduct discovery.

The Vitol Defendants filed special appearances on July 26, 2014. CR 51, 64, 77, 90, 103. After all parties agreed to a hearing date, the Vitol Defendants submitted a Notice of Oral Hearing on August 25, 2014, notifying the parties that the special appearances were set for hearing on October 6, 2014. SCR 26. On September 6, 2014, counsel for Ms. Loya contacted counsel for the Vitol Defendants, requesting an extension on the hearing. SCR 27. Counsel for the Vitol Defendants agreed to an extension, and on September 23, 2014, the Vitol Defendants submitted an Amended Notice of Oral Hearing, notifying the parties that the special appearances were set for hearing on November 10, 2014. *Id.* On October 16, 2014, the Vitol Defendants filed amended special appearances. CR 121, 149, 160, 199, 225. These amended special appearances contained only a few additional factual allegations. *Id.*; SCR 27. On October 27, 2014, the Vitol Defendants submitted another Amended Notice of Hearing, confirming that the special appearances were set for hearing on November 10, 2014. SCR 27.

On October 28, 2014, less than two weeks before the hearing and over three months after the Vitol Defendants filed their original special appearances, counsel for Loya requested discovery for the first time—depositions of all the declarants to

27

the special appearances, including Sam Lambroza, Karl Pardaens, Jonathan Marsh, Ian Taylor, and Jacobus Sterken. *Id*.; CR 434. Counsel for the Vitol Defendants agreed and offered Mr. Lambroza, Mr. Pardaens, Mr. Marsh, Mr. Taylor, and Mr. Sterken for depositions by phone during the week of November 3, 2014. SCR 27. On October 29, 2014, three months after the special appearances were filed and two weeks before the hearing that had been set for almost two months, Loya served her first requests for production on the Vitol Defendants, to which responses were not due until after the long-scheduled hearing. *Id*.; CR 434-447.

The affidavits of Loya's counsel attached to the motions for continuance simply make the conclusory assertion that Loya has been diligent in seeking discovery; they do not explain why Loya waited three months to make these requests or why the information is necessary to Loya's opposition to the special appearances. *See, e.g.,* CR 449. Loya did not act diligently in trying to retain the information sought, and the trial court properly denied Loya's motions for continuance on that basis alone. *BMC Software*, 83 S.W.3d at 800–01 (holding that the trial court did not abuse discretion in denying the continuance before the special appearance hearing when the movant had ample time to conduct, and did conduct, discovery).

## C. The documents requested are unnecessary or irrelevant to the establishment of jurisdictional facts.

This Court has recognized that "Rule 120a(3) does not authorize postponement of a special appearance hearing to allow a party to obtain discovery prior to the court's ruling on the special appearance that is unnecessary or irrelevant to the establishment of jurisdictional facts." *In re Stern*, 321 S.W.3d 828, 839–40 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding) (holding that that a non-resident defendant's emails to his alleged co-conspirators are not relevant to the establishment of Texas courts' jurisdiction over the defendant and cannot be essential to justifying the opposition to the special appearance and that the trial court abused its discretion by ordering discovery); *see also Moncrief Oil Intn'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 158 (Tex. 2013) (holding that the trial court did not abuse its discretion in refusing to allow depositions because the party seeking to compel the depositions did not demonstrate the additional jurisdictional facts the depositions would provide).

Loya did not explain to the trial court why the requested discovery was necessary. In fact, the information Loya requested from the Vitol Defendants is wholly irrelevant to the establishment of jurisdictional facts. For example, Loya's request for information regarding the Vitol Defendants' communications and

contracts with Texas residents is irrelevant to general jurisdiction under recent case law from the United States Supreme Court.[9]

In *Daimler*, the United States Supreme Court rejected the exercise of general jurisdiction "in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" *Daimler*, 134 S. Ct. at 760-61. Recognizing the limited nature of general or all-purpose jurisdiction, the Court reiterated that a defendant's affiliations with the State in which suit is brought must be so constant and pervasive as to render it essentially "at home" in the forum State. *Id.* at 754. The jurisdictional facts Loya has alleged do not support general jurisdiction under this standard, and she is not entitled to engage in a broad-ranging fishing expedition into the "systematic course of business"-type facts that would not support general jurisdiction. Loya has admitted that none of the Vitol Defendants reside in Texas, have their headquarters in Texas, or are incorporated in Texas; accordingly, none of them are "at home" in Texas.

The document requests Loya propounded are extraordinarily broad and burdensome, and they bear little, if any, connection to the jurisdictional facts Loya

---

[9]   Although Loya has argued specific jurisdiction to this Court, she did not allege a substantial connection between the Vitol Defendants' alleged contacts with Texas and the operative facts of the litigation. SCR 4-6; *see Moki Mac River Expeditions v. Drugg*, 221 S.W.3d at 585 (emphasis added). To the extent Loya genuinely contends specific jurisdiction exists, the relevant facts involve the alleged misrepresentations and omissions. Loya contends these occurred in discovery in her divorce proceeding. Loya has the products of that discovery, and to the extent any of that discovery physically took place in Texas, Loya was well aware of those facts prior to filing her claims against the Vitol Defendants. She did not need discovery to allege or prove those facts, if they existed.

30

has pled.[10]  Loya has essentially asked the Vitol Defendants to open their file cabinets and let her search through them for any Texas contacts.  For example, of the entity defendants, Loya has sought all articles of incorporation, by-laws, minutes of shareholder and board meetings, resolutions of the directors and shareholders, and stock transfer books; all telephone bills reflecting long-distance calls and faxes (whether or not involving Texas); all invoices received from Texas customers or clients of the entity <u>and its affiliated or subsidiary companies</u> in the last five years (notwithstanding the fact that affiliate and subsidiary contacts cannot be attributed to the defendants); all organizational charts; all insurance policies, including on any vessels or drilling rigs; all accounting ledgers; all documents reflecting asset acquisitions; and many other items with no connection to jurisdiction.  *See, e.g.,* CR 434-447 (requests to Stichting Tinsel).  These requests do not reflect a good-faith attempt at jurisdictional discovery, nor did Loya demonstrate by affidavit to the trial court any tie between these requests and information that is "essential to justify [her] opposition."  TEX. R. CIV. P. 120a(3).

To the extent that any of Loya's document requests were even relevant, Loya was not prevented from conducting discovery on the information sought in those requests.  When Loya requested depositions less than two weeks before the hearing, the Vitol Defendants made a corporate representative for each Vitol

---

[10] *See, e.g.*, CR 434-447 (Stichting Tinsel); 667-678 (Ian Taylor).

31

Defendant available for depositions by phone during the following week. Loya's counsel had the opportunity to ask questions related to the topics covered in her requests for production, and in most instances, Loya's counsel failed to ask any questions regarding those topics. SCR 30; *see also* CR 1003, 1057, 1085, 1128, 1159 (deposition transcripts). Loya has complained that certain deponents deferred to other deponents on important questions, but when this occurred, Loya had the opportunity to follow up with the subsequent deponent. For example, Karl Pardaens, the corporate representative for Tinsel, testified that the best person to ask about contracts between Tinsel and Miguel Loya was Jacques Sterken. CR 1196-98. Pardaens was deposed on November 4, 2014. CR 1155. Sterken was deposed on November 6, 2014. CR 1081. Counsel for Loya asked Sterken about the contracts between Tinsel and Miguel Loya. CR 1103-05. The trial court properly denied Loya's motion for continuance.

## CONCLUSION

The trial court did not err in granting the Vitol Defendants' special appearances. Loya has not pled sufficient jurisdictional facts, and the Vitol Defendants have negated all facts pled and all facts alleged in response to the Vitol Defendants' special appearances. Further, the trial court did not abuse its jurisdiction in denying Loya's motion for continuance. Loya failed to demonstrate that she diligently pursued discovery and that the requested discovery was

32

necessary to her opposition to the special appearances. The Vitol Defendants respectfully request that the Court affirm the trial court's orders granting the Vitol Defendants' special appearances and dismissing Loya's claims against the Vitol Defendants.

Respectfully submitted,

**VINSON & ELKINS L.L.P.**


*/s/ Patrick W. Mizell*
Patrick W. Mizell
Attorney-In-Charge
Texas Bar No. 14233980
Catherine B. Smith
Texas Bar No. 03319970
Deborah C. Milner
Texas Bar No. 24065761
Jaclyn M. Lynch
Texas Bar No. 24083429
1001 Fannin, Suite 2500
Houston, Texas 77002-6760
Telephone: 713.758.2932
Facsimile: 713.615.5912
e-mail: pmizell@velaw.com
e-mail: csmith@velaw.com
e-mail: cmilner@velaw.com
e-mail: jaclynlynch@velaw.com

*Attorneys for Appellees Ian Taylor, Jacobus Sterken,*
*Stichting Tinsel Group, Vitol Holding II, S.A., and Tinsel Group, S.A.*

34

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 8,519 words, excluding the words not included in the word count pursuant to Texas Rule of Appellate Procedure 9.4(i)(1). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document as well as a hand count of words contained in the charts included in the brief.

*/s/ Deborah C. Milner*
Deborah C. Milner

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 25, 2015, the foregoing Brief of Appellees was served electronically on the following parties in accordance with the requirements of the Texas Rules of Appellate Procedure:

Jennifer Job
James E. Payne
Provost Umphrey Law Firm, L.L.P.
490 Park Street
P. O. Box 4905
Beaumont, Texas 77701
409.835.8605
jjob@pulf.com
jpayne@pulf.com
*Attorneys for Appellant Leticia Loya*

*/s/ Deborah C. Milner*
Deborah C. Milner